

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

TIME INC., HEARST CORPORATION, ADVANCE
MAGAZINE PUBLISHERS INC., AMERICAN
MEDIA, INC., HACHETTE FILIPACCHI MEDIA
U.S., INC., THE McGRAW-HILL COMPANIES,
INC., NEWSWEEK, INC., SOURCE INTERLINK
MAGAZINES, LLC, REED BUSINESS
INFORMATION, A DIVISION OF REED
ELSEVIER INC., VARIETY, INC., REED
ELSEVIER PROPERTIES INC., BONNIER
CORPORATION, ZIFF DAVIS PUBLISHING
HOLDINGS INC., FORBES LLC, REIMAN MEDIA
GROUP, INC., RD LARGE EDITION, INC., HOME
SERVICE PUBLICATIONS, INC. and READER'S
DIGEST LATINOAMERICA SA,

                              Plaintiffs,

                      - against -

DARREN ANDREW BUDD, SALVEO LIMITED,
CYBERNET COMMUNICATIONS, INC.,
SWITCHWORKS TECHNOLOGIES, INC.,
HAMIDULLA GHUMAL ABBAS, YOAV
SCHWARTZ, RICK ROSS and JOHN DOES 1-20,

                              Defendants.

------------------------------------------------------------ x

08 Civ. _____

**COMPLAINT**



        Plaintiffs Time Inc., Hearst Corporation, Advance Magazine Publishers Inc. d/b/a Condé

Nast Publications, American Media, Inc., Hachette Filipacchi Media U.S., Inc., The McGraw-

Hill Companies, Inc., Newsweek, Inc., Source Interlink Magazines, LLC, Reed Business

Information, a division of Reed Elsevier Inc., Variety, Inc., Reed Elsevier Properties Inc.,

Bonnier Corporation, Ziff Davis Publishing Holdings Inc., Forbes LLC, Reiman Media Group,

Inc., RD Large Edition, Inc., Home Service Publications, Inc. and Reader's Digest

Latinoamerica SA (collectively, the "Publishers") allege as follows for their complaint for

copyright infringement, trademark infringement, false advertising and trademark dilution against

defendants  Darren  Andrew  Budd  ("Budd"),  Salveo  Limited  ("Salveo"),  Cybernet

Communications,  Inc.  ("Cybernet"),  Switchworks  Technologies,  Inc.  ("Switchworks")

Hamidulla Ghumal Abbas ("Abbas"), Yoav Schwartz ("Schwartz"), Rick Ross ("Ross") and John Does 1-20.

## NATURE OF THE ACTION

1.      This complaint arises from the blatant, willful and wholesale infringement perpetrated by defendants Budd, Abbas, Schwartz and Ross through a website owned by Salveo, acting in concert with web hosts Cybernet and Switchworks.  Together, defendants have infringed plaintiffs' copyrights, and infringed and diluted plaintiffs' trademarks, in their well-known magazines at the Mygazines.com web site (the "Infringing Website").  Defendants are reproducing, distributing and displaying unauthorized, full reproductions of literally hundreds of the Publishers' magazines on the Infringing Website, in clear violation of the U.S. Copyright Act.  In addition, their Infringing Website contributes to direct infringement by third-party users by actively inducing and encouraging those users to upload copyrighted content to the Infringing Website, to "share" that content with others, and to create derivative works by combining selective content from multiple publishers into a single work which defendants call a "mygazine".  The use of the Publishers' magazines, including the titles and covers thereof, both on the Infringing Website and as a part of advertising and promotion for that Website, also constitutes a violation of plaintiffs' rights under the Lanham Act.

2.      Among other remedies, the Publishers seek to enjoin and restrain defendants from (1) hosting, reproducing, displaying, distributing or transmitting infringing copies of plaintiffs' copyrighted magazine content in the United States; (2) inducing, causing, materially contributing to, or receiving a direct financial benefit from, the uploading, reproducing, posting, display, distribution or creation of derivative works from plaintiffs' copyrighted magazine content by third parties in the United States; (3) using any trademark that is confusingly similar to, or dilutive of, any of plaintiffs' names, titles, trademarks, trade dress or service marks; and (4) advertising the

Infringing Website in a manner that falsely states or implies that plaintiffs have authorized, licensed or endorsed defendants, their Website and/or their complained of actions.

## THE PARTIES

### *Plaintiffs*

3.     Plaintiff Time Inc. ("Time") is a Delaware corporation with its principal place of business located at 1271 Avenue of the Americas, New York, New York 10020.

4.     Among other corporate activities, Time publishes the following magazines: *Time, People, Entertainment Weekly, Sports Illustrated, Essence, Fortune, Golf, In Style, Money, People en Espanol, People Child Stars, People Style Watch, Real Simple, Sports Illustrated For Kids, This Old House, Coastal Living, Cooking Light, Health, Southern Accents, Business 2.0,* and *Southern Living.* Each of those magazines is widely distributed throughout the United States (including in New York).

5.     Plaintiff Hearst Corporation ("Hearst") is a Delaware corporation with its principal place of business located at 300 West 57th St., New York, NY 10019.

6.     Among other corporate activities, Hearst publishes the following magazines: *Cosmopolitan, CosmoGirl, Country Living, Good Housekeeping, Esquire, Harper's Bazaar, House Beautiful, O the Oprah Magazine, Popular Mechanics, Redbook, Seventeen, Smart Money, Town & Country, Marie Claire,* and *Veranda.* Each of those magazines is widely distributed throughout the United States (including in New York).

7.     Plaintiff Advance Magazine Publishers Inc. d/b/a/ Condé Nast Publications ("Condé Nast") is a New York corporation with its principal place of business located at 4 Times Square, New York, NY 10036.

8.     Among other corporate activities, Condé Nast publishes the following magazines: *Vogue, The New Yorker, Architectural Digest, Vanity Fair, Allure, Bon Appetit, Brides, Conde*

*Nast Traveler, Details, Domino, Glamour, Gourmet, House & Garden, Lucky, Modern Bride, Self, Teen Vogue, W,* and *Wired.* Each of those magazines is widely distributed throughout the United States (including in New York).

9.    Plaintiff American Media, Inc., ("American Media") is a Delaware corporation with its principal place of business located at 1000 American Media Way, Boca Raton, FL 33464-1000.

10.    Among other corporate activities, American Media publishes *Country Weekly, FLEX, GLOBE, Men's Fitness, MUSCLE & FITNESS, National Enquirer, SHAPE,* and *Star.* Each of those magazines is widely distributed throughout the United States (including in New York).

11.    Plaintiff Hachette Filipacchi Media U.S., Inc., ("Hachette") is a Delaware corporation with its principal place of business located at 1633 Broadway, New York, NY 10019.

12.    Among other corporate activities, Hachette publishes *ELLE, ELLE Décor, ELLEGirl, Car and Driver, Road & Track, Metropolitan Home, Popular Photography, Sound & Vision, Boating* and *HOME.* Each of those magazines is widely distributed throughout the United States (including in New York).

13.    Plaintiff The McGraw-Hill Companies, Inc. ("McGraw-Hill") is a  New York corporation with its principal place of business located at  1221 Avenue of the Americas, New York, NY 10020.

14.    Among other corporate activities, McGraw-Hill publishes *BusinessWeek* and *Architectural Record.* Each of those magazines is widely distributed throughout the United States (including in New York).

15.   Plaintiff Newsweek, Inc., ("Newsweek") is a New York corporation with its principal place of business located at 251 West 57th Street, New York, NY 10019.

16.   Among other corporate activities, Newsweek publishes *Newsweek* magazine, the well-known newsweekly. Newsweek also owns Newsweek Budget Travel, Inc. ("NBT"), the publisher of *Arthur Frommer's Budget Travel* magazine. Both magazines are widely distributed throughout the United States (including in New York) and Canada.

17.   Plaintiff Source Interlink Magazines, LLC, ("SIM") is a Delaware limited liability company with its principal place of business located at 27500 Riverview Center Boulevard, Bonita Springs, Florida 34134.

18.   Among other corporate activities, SIM publishes *Motor Trend, Automobile, Hot Rod, Soap Opera Digest, Soap Opera Weekly, Petersen's 4 Wheel & Off Road, Four Wheeler, Readers' Rigs, Motorcyclist, Motorcyclist Retro, ATV Rider, Dirt Rider, Car Craft,* and *Power Motor Yacht.* Each of those magazines is widely distributed throughout the United States (including in New York).

19.   Plaintiff Reed Business Information, a division of Reed Elsevier Inc. ("Reed"), is a Massachusetts corporation with its principal place of business located at 360 Park Avenue South, New York, NY 10010-1710.

20.   Among other corporate activities, Reed publishes *Interior Design*, which is widely distributed throughout the United States (including New York).

21.   Plaintiff Variety, Inc. ("Variety") is a New York corporation with its principal place of business at 5700 Wilshire Boulevard, Los Angeles, CA 90036.

22.   Among other corporate activities, Variety publishes *Variety*, which is widely distributed throughout the United States (including New York).

23.    Plaintiff Reed Elsevier Properties Inc. ("REPI") is a Delaware corporation with its principal place of business located at 1105 North Market St., Wilmington, DE 19801.

24.    Among other corporate activities, REPI owns the trademarks for the titles of *Variety* and *Interior Design*.  Each of those magazines is widely distributed throughout the United States (including in New York).

25.    Plaintiff Bonnier Corporation ("Bonnier") is a Delaware corporation with its principal place of business located at 460 N. Orlando Ave., Suite 200, Winter Park, FL 32789.

26.    Among other corporate activities, Bonnier publishes *Babytalk, Cruising World, Motor Boating, Outdoor Life, Parenting, Popular Science, Saveur, Transworld Skateboarding, Transworld Surf,* and *Yachting*.  Each of those magazines is widely distributed throughout the United States (including in New York).

27.    Plaintiff Ziff Davis Publishing Holdings, Inc. ("Ziff Davis") is a Delaware corporation with its principal place of business at 28 East 28th Street, New York, NY 10016.

28.    Among other corporate activities, Ziff Davis publishes *PC Magazine* and *Electronic Gaming Monthly*.  Each of those magazines is widely distributed throughout the United States (including in New York).

29.    Plaintiff Forbes LLC ("Forbes") is a Delaware corporation with its principal place of business at 60 Fifth Avenue, New York, NY 10011.

30.    Among other corporate activities, Forbes publishes *Forbes Magazine*, which is widely distributed throughout the United States (including New York).

31.    Reader's Digest Association ("RDA") is the parent corporation of plaintiffs Home Service Publications, Inc. ("HSP"), Reiman Media Group, Inc. ("RMG"), Reader's Digest Latinoamerica SA ("RDLA") and RD Large Edition, Inc. ("RDLE").  RDA is a Delaware

corporation with its principal place of business at Reader's Digest Road, Pleasantville, New York, 10570-7000.

32.     Among other corporate activities, RDA (through its subsidiaries) publishes *Reader's Digest Large Print*, *Selecciones*, *The Family Handyman*, *Taste of Home*, *Birds & Blooms* and *Country Woman*.  Each of those magazines is widely distributed throughout the United States (including in New York).

33.     Collectively, the Publishers' Magazines are among the most widely distributed magazines in the United States, and many are also distributed in Canada.  They are widely accessible at newsstands and by subscription, and vast majority of Publishers own and operate websites that are affiliated with their respective Magazines, on which certain of the content published in the print issues of the Magazines is available.

34.     Many of the Publishers also have relationships with online partners such as Zinio.com, through which digital editions of the Publishers' Magazines are made available for viewing by consumer, for a fee.

***Defendants***

35.     Defendant Budd is an individual who is domiciled and resides at 21 Mayfair Avenue, Toronto, Ontario.  Upon information and belief, Budd is the owner or one of the owners of the Infringing Website and has dominion and control over that website.  He is the original domain registrant for www.mygazines.com, and has registered numerous other domain names that contain the term "mygazines".  Budd has also submitted trademark applications for MYGAZINES in multiple classes to the United States Patent and Trademark Office ("USPTO"), and the Canadian Intellectual Property Office.  Further, Budd actively engaged in advertising and promotion of the Infringing Website on the Internet and his name is listed within the internal computer code (Flash files) of the Website.

36.    Salveo Limited is a purported corporate entity located at Mitchell House, P.O. Box 17, The Valley, the British Overseas Territory of Anguilla ("Anguilla"). Salveo is the current registrant of record for the www.mygazines.com domain name, as well as for other domain names that incorporate the term "mygazines", the registration information for those domain names lists one "John Smith" as the contact person for the domain names. "John Smith", upon information and belief, is an alias of defendant Budd. Press statements about the Infringing Website have been issued by a "John Smith" at the address listed for Salveo in Anguilla. Also, "John Smith" has posted a software application on the social networking website Facebook that allows users to "gift" their favorites magazines from the Infringing Website to friends.

37.    Defendant Cybernet is a corporation organized and existing under the laws of Canada with its principal place of business at 20 Amber Street, Markham, Ontario. Cybernet provides web hosting services to the Infringing Website, including hosting all of the scanned magazine content used in connection with the Infringing Website, on multiple computer servers. Despite due demands from the Publishers and take-down notices under the Digital Millennium Copyright Act ("DMCA"), Cybernet has continued to host the Website and, upon information and belief, is fully aware of the infringing nature of the Website.

38.    Defendant Switchworks is a corporation organized and existing under the laws of Canada with its principal place of business at 23 Triller Avenue, Suite 201, Toronto Ontario. Switchworks provides web hosting services to the Infringing Website, including hosting all of the scanned magazine content used in connection with the Infringing Website, on multiple computer servers. Despite due demands from the Publishers and DMCA take-down notices, Cybernet has continued to host the Website and, upon information and belief, is fully aware of

the infringing nature of the Website. Upon information and belief, Switchworks also provides financial and/or business support for the Infringing Website.

39.    Defendant Ross is an individual who is domiciled and resides at an unknown address in Toronto, Canada. Ross is the president and/or owner of defendants Cybernet and Switchworks and, upon information and belief, exercises dominion and control over those entities. Ross has described his company Switchworks as an "incubator" for Internet companies, and is the sponsor (and domain name owner) for a website called "MyPersona.ca"; in addition, the website for his company Cybernet is located at the domain name mycybernet.net, and the home page refers to the site as "MyCybernet". Upon information and belief, the "Mygazines" website is another "My___" website for which Ross provides substantial financial support.

40.    Defendant Hamidulla Ghumal Abbas is an individual who is domiciled and resides at 95 Thorncliffe Drive, Toronto, Ontario. Upon information and belief, Abbas assisted in the creation of the Infringing Website and actively participates in its continuing operations. Abbas' name appears within the source code for the Infringing Website, and Abbas was the third "friend" to sign up for the Website and has registered multiple aliases on the Site. Abbas is a computer programmer with an expertise in the type of website design and coding used in the Infringing Website. He is listed as a "friend" of the "John Smith" on Facebook who posted the Mygazines.com "gift" application, and indeed until July 31, 2008 was listed as John Smith's only friend.

41.    Defendant Yoav Schwartz is an individual who is domiciled and resides at 10 Bellair Street, Unit 1604, Toronto, Ontario. Upon information and belief, Schwartz assisted in the creation of the Infringing Website and actively participates in its continuing operations. Schwartz's name appears within the source code for the Infringing Website, and Schwartz was

the second "friend" to sign up for the Website, under the aliases "yms" and "yostar". Schwartz is an expert in Flash and PHP coding for websites, which are major features of the Infringing Website. Schwartz has made numerous postings on the social bookmarking website Digg.com, promoting the Infringing Website. Schwartz is also listed as a "friend" of Darren Budd on a website known as Gigpark.com.

## JURISDICTION AND VENUE

42.    This Court has federal subject matter jurisdiction with respect to this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338.

43.    This Court has personal jurisdiction, pursuant to Fed. R. Civ. P., Rule 4(k)(1)(A) and New York CPLR § 302, over all defendants on the grounds that they have, upon information and belief, (a) transacted business within this District via the exchange of information between defendants and website users located in the District; (b) induced and encouraged the commission of tortious acts by third parties within the District; (c) caused the commission of tortious acts by third parties in this District; (d) caused injury to property within the District, where they should reasonably have expected their acts to have consequences, and have derived, or will derive, substantial revenue from interstate or international commerce.    Alternatively, and upon information and belief, this Court has personal jurisdiction pursuant to pursuant to Fed. R. Civ. P., Rule 4(k)(2), on the ground that defendants are not subject to jurisdiction in any state's courts of general jurisdiction.

44.    Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2).

## FACTUAL BACKGROUND

### *The Infringing Content on the Mygazines.com Website*

45.    Upon information and belief, the Infringing Website went live on or around July 19, 2008, and at that time was fully populated with uniform, high-quality content, including

unauthorized copies of multiple issues of magazines published by each of the Publishers as detailed below.

### *Time's Magazines*

46.     The Infringing Website contains entire copies of recent issues of the following magazines published by Time: *Time, People, Entertainment Weekly, Sports Illustrated, Essence, Fortune, Golf, In Style, Money, People en Espanol, People Child Stars, People Style Watch, Real Simple, Sports Illustrated For Kids, This Old House, Coastal Living, Cooking Light, Health, Southern Accents,* and *Southern Living.* In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *People,* all eight weekly issues from July and August 2008 are posted on the Infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is annexed hereto as Exhibit A.

47.     The foregoing works published by Time, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States (the copyrighted content belonging to all plaintiffs and displayed on the Mygazines.com site is referred to hereinafter, collectively, as the "Magazines"). Those works may only be published, reproduced, distributed and displayed by Time, or pursuant to Time's permission, and only Time may authorize the creation of derivative works based on its copyrighted content in their magazines.

48.     Time holds valid and subsisting copyright registrations for the following magazines issues: *Time,* April 7, 2008, April 14, 2008, Summer 2008 (S&D), April 21, 2008April 28, 2008, May 5, 2008, May 12, 2008, May 19, 2008 May 25, 2008, June 2, 2008, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14, 2008, July 21, 2008, July 28, 2008, August 4, 2008 and August 11, 2008, *People,* April 7, 2008, April 14, 2008, April 21, 2008, April 28, 2008 May 5, 2008, May 12, 2008, May 19, 2008, June 2008 (Jones),

May 26, 2008, June 2008 (Country), June 2, 2008, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 2008, July 14, 2008, July 21, 2008, August 4, 2008, August 11, 2008 and August 18, 2008, *People En Espanol,* June 2008, July 2008 an August 2008, *People Stylewatch,* June/July 2008, *Golf Magazine,* May 2008, June 2008, July 2008 and August 2008, *Sports Illustrated,* April 7, 2008, April 8, 2008, April 14, 2008, April 21, 2008, April 28, 2008, May 5, 2008, May 6, 2008, May 12, 2008, May 19, 2008, May 26, 2008, June 2, 2008, June 9, 2008, June 10, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14-21, 2008, July 28, 2008 and August 4, 2008, *Sports Illustrated for Kids,* June 2008, July 2008 and August 2008, *Fortune,* March 17, 2008, March 31, 2008, April 14, 2008 April 28, 2008, May 5, 2008, May 12, 2008, May 26, 2008, June 9, 2008, June 23, 2008, July 7, 2008 and July 21, 2008, *Entertainment Weekly,* June 20, 2008, June 27, 2008, July 4, 2008, July 11, 2008, July 18, 2008, July 25, 2008, August 1, 2008 and August 8, 2008, *InStyle,* May 2008, June 2008 and July 2008 and August 2008 *Real Simple,* May 2008, June 2008 and August 2008, *Essence,* May 2008, June 2008, July 2008 and August 2008, *This Old House,* June 2008 and July/August 2008, *Money,* May 2008, June 2008 and July 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

49.    The foregoing works published by Time, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by Time and used in interstate commerce, which may only be used by Time, or pursuant to Time's license or authority.

50.    Time and its wholly owned subsidiaries hold valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines:  BUSINESS 2.0; FORTUNE; FORTUNE (Stylized); FORTUNE 500; FORTUNE SMALL BUSINESS; FSB; IN

STYLE; INSTYLE; INSTYLE In Bar Logo; INSTYLE LOGO; MONEY; PEOPLE EN ESPANOL; PEOPLE LOGO; REAL SIMPLE; SI FOR KIDS; SPORTS ILLUSTRATED; SPORTS ILLUSTRATED FOR KIDS; SPORTS ILLUSTRATED KIDS; SPORTS ILLUSTRATED KIDS LOGO; STYLE WATCH; TIME; TIME and Red Border Cover Design; TIME Logo; Time Red Border Cover Design; COOKING LIGHT; COOKING LIGHT EAT SMART, BE FIT, LIVE WELL; SOUTHERN LIVING; COASTAL LIVING; SOUTHERN ACCENTS; ESSENCE; ENTERTAINMENT WEEKLY; GOLF; GOLF (STYLIZED); GOLF MAGAZINE; GOLF MAGAZINE (STYLIZED); HEALTH; THIS OLD HOUSE and THIS OLD HOUSE LOGO. (The trademarks belonging to all plaintiffs and displayed on the Mygazines.com site or used to advertise the Mygazines.com site, are referred to hereinafter, collectively, as the "Marks".) A list of these trademark registrations is included as part of Exhibit A.

51.    In addition to the foregoing federal registrations, Time and its wholly owned subsidiaries have common law rights in their magazine titles, logos, trade dress and other elements of each of their magazines, in light of their continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Time and its magazines.

52.    A number of Time's trademarks have become what are termed famous marks including, *inter alia*, TIME, PEOPLE, SPORTS ILLUSTRATED, FORTUNE, IN STYLE, MONEY, SOUTHERN LIVING, ESSENCE, ENTERTAINMENT WEEKLY, and GOLF.

### *Hearst's Magazines*

53.    The Infringing Website contains copies of the following magazines published by Hearst: *CosmoGirl, Cosmopolitan, Country Living, Good Housekeeping, Harper's Bazaar, House Beautiful, Marie Claire, O The Oprah Magazine, Popular Mechanics, Redbook,*

*Seventeen*, *Smart Money*, *Town & Country*, and *Veranda*.  In many cases, issues of each magazine for different months are available on the Infringing Website.  For example, for *Esquire*, the June, July, August and September 2008 issues are posted on the Infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

54.    The foregoing works published by Hearst, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States.  Those works may only be published, reproduced, distributed and displayed by Hearst, or pursuant to Hearst's permission, and only Hearst may authorize the creation of derivative works based on its copyrighted content in their magazines.

55.    Hearst (through its subsidiaries and joint venture relationships) holds valid and subsisting copyright registrations for the following magazines issues:  *CosmoGirl*, August 2008, June/July 2008; *Cosmopolitan*, Summer/Fall 2008, August 2008, June 2008; *Country Living*, August 2008, July 2008, June 2008; *Esquire*, August 2008, July 2008, June 2008; *Good Housekeeping*, August 2008, June 2008; *Harper's Bazaar*, August 2008, July 2008, June 2008, Sept. 2007; *House Beautiful*, August 2008, July 2008, August 2007; *Marie Claire*, August 2008, June 2008, May 2008; *O The Oprah Magazine*, August 2008, July 2008, June 2008; *Popular Mechanics*, August 2008, June 2008; *Redbook*, August 2008, July 2008, June 2008; *Seventeen*, August 2008, June 2008; *Smart Money,* August 2008, July 2008, June 2008; *Town & Country*, August 2008, June 2008; and *Veranda*, August 2008.  A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

56.    The foregoing works published by Hearst, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by

or licensed to Hearst, and used in interstate commerce, which may only be used by Hearst, or pursuant to Hearst's license or authority.

57.     Hearst (through its subsidiaries and joint venture relationships) holds or is licensed to use valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: COSMO GIRL; COSMOPOLITAN; COSMOPOLITAN STYLE; COUNTRY LIVING; ESQUIRE; GOOD HOUSEKEEPING; HARPER'S BAZAAR; HOUSE BEAUTIFUL; MARIE CLAIRE; O THE OPRAH MAGAZINE; POPULAR MECHANICS; REDBOOK; SEVENTEEN; SEVENTEEN PROM; SMARTMONEY; TOWN & COUNTRY; TOWN & COUNTRY TRAVEL; and TOWN & COUNTRY WEDDINGS. A list of these trademark registrations is included as part of Exhibit A.

58.     In addition to the foregoing federal registrations, Hearst has (or is licensed to use) common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Hearst and its magazines.

59.     A number of Hearst's trademarks have become what are termed famous marks including, *inter alia*, ESQUIRE, COSMOPOLITAN, HARPER'S BAZAAR, O THE OPRAH MAGAZINE and GOOD HOUSEKEEPING.

### *Condé Nast's Magazines*

60.     The Infringing Website contains copies of the following magazines published by Condé Nast: *Allure, Architectural Digest, Bon Appetit, Brides, Condé Nast Traveler, Details, Domino, Glamour, Gourmet, Lucky, Modern Bride, The New Yorker, Self, Teen Vogue, Vanity Fair, Vogue, W, Wired* and *Wired Geekipedia.* In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *Vanity Fair,*

the June, July, August and September 2008 issues are posted on the infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

61.    The foregoing works published by Condé Nast, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by Condé Nast, or pursuant to Condé Nast' permission, and only Condé Nast may authorize the creation of derivative works based on its copyrighted content in their magazines.

62.    Condé Nast holds valid and subsisting copyright registrations for the following magazines issues: *Allure,* June 2008, July 2008 and August 2008, *Architectural Digest,* issues dated January 2007, February 2007, March 2007, April 2007, May 2007, June 2007, September 2007, October 2007, November 2007, May 2008, July 2008 and August 2008, *Bon Appetit,* June, July and August 2008, *Brides* July and August 2008, *Condé Nast Traveler,* July and August 2008, *Details,* January/February 2006, June/July 2007, June/July 2008 and August 2008, *Domino,* June/July 2008 and August 2008, *Glamour,* May 2008, June 2008 and August 2008, *Gourmet,* July 2008 and August 2008, *Lucky,* July 2008 and August 2008, *Modern Bride,* June/July 2008 and August/September 2008, *The New Yorker,* April 7, 2008, April 14, 2008, April 21, 2008, April 28, 2008, May 5, 2008, May 12, 2008, May 19, 2008, May 26, 2008, June 2, 2008, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14, 2008, July 21, 2008, July 28, 2008, August 4, 2008, August 11, 2008, August 18, 2008, *Self,* June 2008, July 2008 and August 2008, *Teen Vogue,* June/July 2008 and August 2008, *Vanity Fair,* June 2008, July 2008 and August 2008, *Vogue,* June 2008, July 2008 and August 2008, *W,* August 2008, *Wired,* October 2004, January 2006, January 2008, February 2008, March 2008, April 2008, May 2008,

June 2008, July 2008 and August 2008, and *Wired Geekipedia,* October 2007.  A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

63.    The foregoing works published by Condé Nast, copies of which are displayed by Mygazines.com on the Infringing Website, also utilize, incorporate or contain valid and subsisting trademarks owned by Condé Nast, which may only be used by Condé Nast, or pursuant to Condé Nast's permission.

64.    Condé Nast holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines:    ALLURE; ARCHITECTURAL DIGEST; ARCHITECTURAL DIGEST (DESIGN); BON APPETIT; BRIDES; CONDE NAST TRAVELER; DETAILS; DOMINO; GLAMOUR; GOURMET; LUCKY; MODERN BRIDE; THE NEW YORKER; SELF; TEEN VOGUE; VANITY FAIR; VOGUE; W; and WIRED;  .  A list of these trademark registrations is included as part of Exhibit A.

65.    In addition to the foregoing federal registrations, Condé Nast has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Condé Nast and its magazines.

66.    A number of Condé Nast's trademarks have become what are termed famous marks including, *inter alia*, THE NEW YORKER, VANITY FAIR, VOGUE, GLAMOUR, ARCHITECTURAL DIGEST, AND GOURMET.

### *American Media's Magazines*

67.    The Infringing Website contains copies of the following magazines published by American Media: *Country Weekly, FLEX, GLOBE, Men's Fitness, MUSCLE & FITNESS, NATIONAL ENQUIRER, SHAPE,* and *Star*.  In many cases, issues of each magazine for different

weeks or months are available on the Infringing Website. For example, for *NATIONAL ENQUIRER*, all eight weekly issues from June and July 2008 are posted on the infringing Website, as well as one weekly issue from August 2008. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

68.     The foregoing works published by American Media, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by American Media, or pursuant to American Media's permission, and only American Media may authorize the creation of derivative works based on its copyrighted content in their magazines.

69.     American Media hold valid and subsisting for the following copyright registrations magazine issues: *Country Weekly*: June 2, 2008, 2008, June 16, 2008, June 30, 2008, July 14, 2008, July 28, 2008, and August 11, 2008, *FLEX*, June 2008, July 2008, and August 2008, *GLOBE,* June 23, 2008, June 30, 2008, July 7, 2008, July 14, 2008, July 21, 2008, July 28, 2008, August 4, 2008, and August 11, 2008, *Men's Fitness*, June/July 2008 and August 2008, *MUSCLE & FITNESS*, July 2008, August 2008, and September 2008, *NATIONAL ENQUIRER*, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14, 2008, July 21, 2008, July 28, 2008, August 4, 2008, and August 11, 2008, , *SHAPE*, August 2008 and September 2008, *Star* May 26, 2008, June 2, 2008, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14, 2008, July 21, 2008, July 28, 2008, and August 4, 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

70.     The foregoing works published by American Media, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by American Media, and used in interstate commerce, which may only be used by American Media, or pursuant to American Media's license or authority.

71.     American Media holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: COUNTRY WEEKLY; FLEX; GLOBE; MEN'S FITNESS; MUSCLE & FITNESS; NATIONAL ENQUIRER; SHAPE; and STAR. A list of these trademark registrations is included as part of Exhibit A.

72.     In addition to the foregoing federal registrations, American Media has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with American Media and its magazines.

73.     A number of American Media's trademarks have become what are termed famous marks including, *inter alia*, NATIONAL ENQUIRER, GLOBE and STAR.

### *Hachette's Magazines*

74.     The Infringing Website contains copies of the following magazines published by Hachette:    *BOATING, Car & Driver, ELLE, ELLE Décor, ELLE Girl, Flying, HOME, Metropolitan Home, Popular Photography, Road & Track,* and *Sound & Vision.* In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *Car and Driver*, the July, August and September 2008 issues are posted on the Infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

75.    The foregoing works published by Hachette, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by Hachette, or pursuant to Hachette's permission, and only Hachette may authorize the creation of derivative works based on its copyrighted content in their magazines.

76.    Hachette holds valid and subsisting copyright registrations for the following magazines issues: *BOATING*, July and August 2008; *Car and Driver*, July, August and September 2008; *ELLE*, July 2008; *ELLE Décor*, March 2006, July/August 2008; *ELLE Girl*, February and March 2006; *Flying*, August 2008; *HOME*, June and July 2008; *Metropolitan Home*, June, July and August 2008; *Popular Photography*, July and August 2008; *Road & Track*, August and September 2008; and *Sound & Vision*, July 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

77.    The foregoing works published by Hachette, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by Hachette, and used in interstate commerce, which may only be used by Hachette, or pursuant to Hachette's license or authority.

78.    Hachette holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: BOATING; CAR AND DRIVER; FLYING; HOME; METROPOLITAN HOME; POPULAR PHOTOGRAPHY; ROAD & TRACK and SOUND & VISION. Hachette holds an exclusive license from Hachette Filipacchi Presse, its corporate affiliate, to use the ELLE, ELLE DECOR and ELLE GIRL trademarks on magazines, websites and related products and services in the United States. A list of these trademark registrations is included as part of Exhibit A.

79.    In addition to the foregoing federal registrations, Hachette has (or is licensed to use) common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Hachette and its magazines.

80.    A number of Hachette's trademarks have become what are termed famous marks including, *inter alia*, ELLE, CAR and DRIVER, ROAD & TRACK, POPULAR PHOTOGRAPHY.

### *McGraw-Hill's Magazines*

A.    The Infringing Website contains copies of the following magazines published by McGraw-Hill:  *BusinessWeek* and *Architectural Record.*   A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

81.    The foregoing works published by McGraw-Hill, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States.  Those works may only be published, reproduced, distributed and displayed by McGraw-Hill, or pursuant to McGraw-Hill's permission, and only McGraw-Hill may authorize the creation of derivative works based on its copyrighted content in their magazines.

82.    McGraw-Hill has valid and subsisting copyright registrations for the following magazines issues: *BusinessWeek*, May 19, 2008, May 26, 2008, June 2, 2008, June 9, 2008, June 16, 2008, June 23, 2008, June 30, 2008, July 7, 2008, July 14 & 21, 2008, July 28, 2008, August 4, 2008 and August 11, 2008, and *Architectural Record*, May 2008, June 2008 and July 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

83.    The foregoing works published by McGraw-Hill, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by McGraw-Hill, and used in interstate commerce, which may only be used by McGraw-Hill, or pursuant to McGraw-Hill's license or authority.

84.    McGraw-Hill holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: BUSINESSWEEK; the BUSINESSWEEK Logo and ARCHITECTURAL RECORD.    A list of these trademark registrations is included as part of Exhibit A.

85.    In addition to the foregoing federal registrations, McGraw-Hill has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with McGraw-Hill and its magazines.

86.    A number of McGraw-Hill's trademarks have become what are termed famous marks including, *inter alia*, BUSINESSWEEK and ARCHITECTURAL RECORD.

### *Newsweek's Magazines*

87.    The Infringing Website contains copies of the following magazines published by Newsweek: *NEWSWEEK* and *ARTHUR FROMMER'S BUDGET TRAVEL*.    In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *Newsweek*, 13 issues between May 5, 2008 and August 11, 2008 are posted on the Infringing Website.    A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

88.    The foregoing works published by Newsweek, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright

protection in the United States. Those works may only be published, reproduced, distributed and displayed by Newsweek, or pursuant to Newsweek's permission, and only Newsweek may authorize the creation of derivative works based on its copyrighted content in their magazines.

89.    Newsweek holds valid and subsisting copyright registrations for the following magazines issues: *Newsweek*, May 5, 2008, May 12, 2008, June 16, 2008, June 23, 2008, July 7, 2008, July 21, 2008, July 28, 2008, August 4, 2008, and August 11, 2008, and *Arthur Frommer's Budget Travel*, July/August 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

90.    The foregoing works published by Newsweek, copies of which are displayed by Mygazines.com on the Infringing Website, also utilize, incorporate or contain valid and subsisting trademarks owned by Newsweek, which may only be used by Newsweek, or pursuant to Newsweek's permission.

91.    Newsweek holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: NEWSWEEK and BUDGETTRAVEL. A list of these trademark registrations is included as part of Exhibit A.

92.    In addition to the foregoing federal registrations, Newsweek has common law right in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Newsweek and its magazines.

93.    The NEWSWEEK trademark has become what is termed a famous mark.

### *SIM's Magazines*

94.    The Infringing Website contains copies of the following magazines published by SIM: *Automobile Magazine*, *Motor Trend Magazine*, *Hot Rod Magazine*, *Soap Opera Digest*,

*Soap Opera Weekly, Petersen's 4 Wheel & Off Road Magazine, Four Wheeler Magazine, Readers' Rigs Magazine, Motorcyclist Magazine, Motorcyclist Retro, ATV Rider Magazine, Dirt Rider,* and *Car Craft Magazine*.  In many cases, issues of each magazine for different weeks or months are available on the Infringing Website.  For example, for *Soap Opera Weekly*, all 5 weekly issues from July 2008 are posted on the infringing Website, as well as three weekly issues from August 2008.  A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

95.    The foregoing works published by SIM, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States.  Those works may only be published, reproduced, distributed and displayed by SIM, or pursuant to SIM's permission, and only SIM may authorize the creation of derivative works based on its copyrighted content in their magazines.

96.    SIM holds valid and subsisting copyright registrations for the following magazines issues:  *Automobile Magazine* July 2008, August 2008 and September 2008, *Motor Trend Magazine,* July 2008, August 2008, and September 2008.  A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

97.    The foregoing works published by SIM, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by SIM, and used in interstate commerce, which may only be used by SIM, or pursuant to SIM's license or authority.

98.    SIM holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: MOTOR TREND; AUTOMOBILE; HOT ROD; SOAP OPERA DIGEST; SOAP OPERA WEEKLY; PETERSEN'S 4 WHEEL & OFF ROAD;

FOUR WHEELER; MOTORCYCLIST; ATV RIDER; DIRT RIDER; and POWER & MOTORYACHT. A list of these trademark registrations is included as part of Exhibit A.

99.    In addition to the foregoing federal registrations, SIM has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with SIM and its magazines.

100.    A number of SIM's trademarks have become what are termed famous marks including, *inter alia*, MOTOR TREND, AUTOMOBILE, HOT ROD, SOAP OPERA DIGEST, AND SOAP OPERA WEEKLY.

### Reed and Variety's Magazines

101.    The Infringing Website contains copies of the following magazines published by Reed and Variety (collectively, "Reed"): *Variety* and *Interior Design*. In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *Interior Design*, the May, June and September 2008 issues are posted on the Infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

102.    The foregoing works published by Reed, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by Reed, or pursuant to Reed's permission, and only Reed may authorize the creation of derivative works based on its copyrighted content in their magazines.

103.    Reed holds valid and subsisting copyright registrations for the following magazines issues: June 2-8, 2008, June 9-15, 2008, June 16-22, 2008, June 23-29, 2008 and

June 30-July 13, 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

104.    The foregoing works published by Reed, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by REPI, and used in interstate commerce, which may only be used by REPI, or pursuant to REPI's license or authority.

105.    REPI holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: INTERIOR DESIGN and VARIETY. A list of these trademark registrations is included as part of Exhibit A.

106.    In addition to the foregoing federal registrations, REPI has common law right in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Reed and its magazines.

107.    A number of REPI's trademarks have become what are termed famous marks including, *inter alia*, VARIETY and INTERIOR DESIGN.

### Bonnier's Magazines

108.    The Infringing Website contains copies of the following magazines published by Bonnier: *Parenting, Popular Science, Outdoor Life, Babytalk, Cruising World, Motor Boating, Saveur, Transworld Skateboarding, Transworld Snowboarding, Transworld Surf,* and *Yachting.* In many cases, issues of each magazine for different weeks or months are available on the Infringing Website. For example, for *Popular Science*, the May, June, August and September 2008 issues are posted on the Infringing Website. A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

109.    The foregoing works published by Bonnier, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by Bonnier, or pursuant to Bonnier's permission, and only Bonnier may authorize the creation of derivative works based on its copyrighted content in their magazines.

110.    Bonnier holds valid and subsisting copyright registrations for the following magazines issues: *Parenting,* June 2008 and August 2008, *Popular Science,* June 2008 and August 2008, *Outdoor Life,* May 2008 and June/July 2008. A list of the copyright registration numbers for each of the above issues is included as part of Exhibit A.

111.    The foregoing works published by Bonnier, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by Bonner, and used in interstate commerce, which may only be used by Bonnier, or pursuant to Bonnier's license or authority.

112.    Bonnier holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: BABY TALK; BABY TALK Logo; CRUISING WORLD; MOTOR BOATING; OUTDOOR LIFE; PARENTING; POPULAR SCIENCE; TRANSWORLD SKATEBOARDING; TRANSWORLD SURF and YACHTING. A list of these trademark registrations is included as part of Exhibit A.

113.    In addition to the foregoing federal registrations, Bonnier has common law right in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Bonnier and its magazines.

114.   A number of Bonnier's trademarks have become what are termed famous marks including, *inter alia*, POPULAR SCIENCE and OUTDOOR LIFE.

### Ziff Davis' Magazines

115.   The Infringing Website contains copies of the following magazines published by Ziff Davis:  *PC Magazine* and *Electronic Gaming Monthly*.  In many cases, issues of each magazine for different weeks or months are available on the Infringing Website.  For example, for *PC Magazine*, the February, July, August and September 2008 issues are posted on the Infringing Website.  A list of all issues of the above magazines that appear on the Infringing Website is included as part of Exhibit A.

116.   The foregoing works published by Ziff Davis, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States.  Those works may only be published, reproduced, distributed and displayed by Ziff Davis, or pursuant to Ziff Davis's permission, and only Ziff Davis may authorize the creation of derivative works based on its copyrighted content in their magazines.

117.   Ziff Davis has applied to the Copyright Office for expedited registration of the foregoing issues and expects for the applications to be approved by the Copyright Office within the next few days.  A list of the expedited copyright applications for each of the above issues is included as part of Exhibit A.

118.   The foregoing works published by Ziff Davis, copies of which are displayed by Mygazines.com on the Infringing Website, also bear valid and subsisting trademarks owned by Ziff Davis, and used in interstate commerce, which may only be used by Ziff Davis, or pursuant to Ziff Davis's license or authority.

119.    Ziff Davis holds valid and subsisting federal trademark registrations for the following titles or elements of the foregoing magazines: PC MAGAZINE and ELECTRONIC GAMING MONTHLY. A list of these trademark registrations is included as part of Exhibit A.

120.    In addition to the foregoing federal registrations, Ziff Davis has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Ziff Davis and its magazines.

121.    The PC MAGAZINE trademark has become what is termed a famous mark.

*Forbes' Magazines*

122.    The Infringing Website contains copies of *Forbes* magazine, which is published by Forbes.

123.    The foregoing works published by Forbes, copies of which are displayed by Mygazines.com on the Infringing Website, are subject to valid and subsisting copyright protection in the United States. Those works may only be published, reproduced, distributed and displayed by Forbes, or pursuant to Forbes's permission, and only Forbes may authorize the creation of derivative works based on its copyrighted content in their magazines.

124.    Forbes has applied to the Copyright Office for expedited registration of the foregoing issues and expects for the applications to be approved by the Copyright Office shortly. A list of the copyright applications for each of the above issues is included as part of Exhibit A.

125.    The foregoing works published by Forbes, copies of which are displayed by Mygazines.com on the Infringing Website, also utilize, incorporate or contain valid and subsisting trademarks owned by Forbes, which may only be used by Forbes, or pursuant to Forbes's permission.

126.    Forbes holds valid and subsisting federal trademark registrations for FORBES.  A list of these trademark registrations is included as part of Exhibit A.

127.    In addition to the foregoing federal registrations, Forbes has common law rights in its magazine titles, logos, trade dress and other elements of each of its magazines, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade dress and other elements as an indication of the source of the products and services associated with Forbes and its magazines.

128.    The FORBES trademark has become what is termed a famous mark.

### The Infringing Website's Functionality

129.    The Infringing Website purports to be a "free place to browse, share, archive and customize unlimited magazine articles uploaded by … the Mygazines community".  The site's tagline or slogan reads: "upload. share. archive."  The site further proclaims that "[y]our document will be converted by our system into an interactive publication allowing users from all over the world to read, comment, share and archive articles from your publication until the end of time!"

130.    Upon information and belief, notwithstanding defendants' invitation to users of the Website to "upload. share. archive", the vast majority of the magazines displayed on the Infringing Website were copied (scanned) and uploaded by defendant Budd and/or by employees or affiliates of Mygazines.com itself, rather than by third-party users.  That conclusion is evident from the speed with which the full reproductions of the Magazines appeared and the uniformity of the quality of the scanned images on the Infringing Website.

131.    Copies of material uploaded to the Infringing Website have been and continue to be copied and stored by defendants in multiple different files of differing sizes, in multiple locations, on different computer servers.

132.    Defendants are responsible for the reproduction, transmission, display and distribution of the unauthorized copies of the Publishers' Magazines on the Infringing Website to users in the United States.

133.    The Infringing Website also invites users to recompile individual articles from different magazines emanating from different publishers into a new collective work, as follows:

> So what are you to do with all these articles you like? Why not archive them into your own personal magazines, or, "mygazines": a collection of articles arranged just the way you like them. Each of your mygazines can be focused on an area of interest – you could setup "recipes" mygazines and store all those pie recipes you found. Redecorating your bedroom? Create "bedrooms" mygazines and store all the articles you find on bedroom décor. You can create as many mygazines as you like and store as many or as few articles in each as you like. The possibilities are endless!

134.    Hundreds of derivative "mygazines", comprised of magazine articles from different publishers including some of the Publishers-plaintiffs, are now available on the Website. Upon information and belief, defendants – including defendants Abbas and Schwartz, whose "mygazines" are listed under aliases known to be associated with those defendants – created many of those "mygazines" themselves, without permission or authority of the owners of the copyrights and trademarks pertaining to the magazines used to create these unauthorized derivative works.

135.    Upon information and belief, a few third-party users have now uploaded and posted content from Magazines owned by plaintiffs onto Mygazines.com, including individuals who reside in the State of New York (as detailed below).

136.    The Infringing Website displays and seeks uploads of magazine content copyrighted and published by parties other than third-party users of the Website themselves, and thus contains virtually no non-infringing content.

137.    The Infringing Website is designed to allow, allows, and encourages users to email links to magazines, articles or customized "mygazines" to others, to "share" magazines, articles and "mygazines" with other members of the Site, and to bookmark or save favorite content on the Site.

138.    Other than two boilerplate sentences in the Terms of Use, nowhere on the Infringing Website is there any indication that users should not post copyrighted magazine content. Indeed, to the contrary, the Terms of Use state:

> By uploading, submitting or otherwise disclosing or distributing Content for display or inclusion on the Site, you represent and warrant that either:
>
> - you purchased the Content,
>
> - you created the Content,
>
> - you own the rights to the Content, and/or
>
> - the Content is freely distributed by its Creator.

By advising that users who have merely "purchased" content are free to upload that content to the Infringing Website, defendants are clearly encouraging and inducing users to upload copyright-protected content, with the full knowledge that such acts are infringing.

139.    The names and full covers of plaintiffs' Magazines are displayed throughout the Infringing Website. Clicking on those covers leads to web pages within the site dedicated to each Magazine issue. The home page of the Site includes, at the top of the page, a revolving, virtual "news rack" displaying a changing assortment of magazine covers, including many of plaintiffs' respective Magazine covers, creating the false impression that the Publishers have licensed, authorized or endorsed the Website to display their Magazines and to create and encourage others to create and share unauthorized derivative works under the trademarks of multiple unrelated publishers.

140.    Defendants use the titles of the Magazines which are the Publishers' respective trademarks, and the covers of those Magazines which are likewise protected as trade dress, throughout the Infringing Website, joining those trademarks with and linking them to defendant Budd's "MYGAZINES" trademark, in a manner which blurs the distinctive nature of the Publishers' respective trademarks.  Similarly, defendants encourage users to combine articles from multiple publishers, many of which bear the respective publisher's famous and distinctive trademarks as indicators of origin, into one "mygazine", which blurs each Publisher's trademark included in the "mygazine".

141.    Defendants encourage users to create titles for each "mygazine" issue they create, to be used as labels for the magazine issues.  With this clear identification of the copyright-protected magazine issues users select to include in a "mygazine", it would be a simple matter for defendants to filter out copyright-protected content, but defendants do not do so.

***Plaintiffs Give Notice of Infringement to Mygazines.com and its Web Hosts***
***While the Owner of the Infringing Website Attempts to Conceal His Identity***

142.    Upon information and belief, within a few weeks of the Infringing Website going live, plaintiffs learned of the website's existence.  At or around that time, plaintiffs learned that the domain name was owned by "John Smith", of Salveo Limited, located in The Valley, Anguilla.  The phone number listed for the company (40.812249340) is in Romania.

143.    Plaintiffs, each on their own behalf, have sent cease and desist letters, including take-down notices under the DMCA as appropriate, by email and courier to John Smith at Salveo Limited, demanding that Salveo Limited either shut down the Infringing Website or remove the respective plaintiffs' Magazines from the site.  A chart listing the dates of these demand letters and take-down notices is annexed hereto as Exhibit B.

144.    The letters put the owners of the Infringing Website on notice that the respective plaintiffs believed that the Website and its owners and operators were directly infringing plaintiffs' copyrights and trademarks, as well as inducing others to do so.

145.    Plaintiffs received email responses from Salveo stating "We are currently unavailable." Emails to some of the email addresses associated with the Website were returned as undeliverable. Salveo did not provide a substantive response to any of plaintiffs' demands.

146.    At or around the same time, plaintiffs learned that the company providing web hosting for the Infringing Website was defendant Cybernet. Most of the plaintiffs respectively sent cease and desist letters to Cybernet as well as to Dynamic, the DNS host. Although Cybernet responded that it would investigate plaintiffs' "concerns", even after repeated subsequent demands, it remains the primary web host for all of the infringing conduct and has refused to cease its unlawful conduct and/or to aid and assist the others of the defendants in such unlawful conduct.

147.    Plaintiffs also discovered that the Domain Name Server ("DNS") for the Infringing Website was being hosted by Dynamic Network Services, Inc., of Manchester, New Hampshire ("Dynamic"). In response to plaintiffs' demands, Dynamic terminated its DNS hosting services for the Infringing Website. The owners of the Infringing Website then switched the site from Dynamic to a new DNS hosting service, Gandi SAS, in Paris.

148.    On or around July 25, 2008, plaintiffs learned that the Infringing Website was also being hosted by another web host (in addition to Cybernet), a company known as Secure Hosting, Ltd. in Nassau, Bahamas. Most of the plaintiffs then sent cease and desist letters to Secure Hosting, as well as to the new DNS host, Gandi SAS. In response to plaintiffs' demand,

Secure Hosting in the Bahamas ceased providing web hosting services for the Infringing Website.

149.    After Secure Hosting terminated the hosting for the Website, the owners of the Infringing Website again migrated their content to two more web hosts in Hong Kong (New World Telecommunications Limited) and Moscow (Best Hosting).  Many of the plaintiffs have sent cease and desist letters and take-down notices to New World Telecommunications Limited and Best Hosting, but neither of these hosts have taken down the Infringing Website, nor blocked access to plaintiffs' copyright-protected content.

150.    On August 6, 2008, defendants added an additional web host called "PRQ", which is based in Stockholm, Sweden.  Although some of the plaintiffs have sent cease and desist letters and take-down notices to PRQ in Stockholm, PRQ has not taken down the Infringing Website, nor blocked access to plaintiffs' copyright-protected content.  A chart showing the dates of plaintiffs' demand letters/take-down notices is annexed hereto as Exhibit B.

***Despite Plaintiffs' Protests, Mygazines.com Continues to Promote Itself***

151.    Mygazines.com's owners and operators and those who control the Infringing Website, continue to promote the Website, to knowingly and willfully violate plaintiffs' rights and to induce others to do so, notwithstanding the above-described notices.

152.    A person posting under the name "Darren Budd" has made numerous postings on various pages of the Facebook.com social networking website advertising the Infringing Website, including postings advertising the Site in conjunction with the use of certain of the plaintiffs' Magazine covers that suggests endorsement, license or authorization by the Publishers. Also, a "John Smith" has posted a software application that allows users to "gift" copies of magazines (including all of plaintiffs' magazines) from the Infringing Website to others; defendant Abbas is listed as a "friend" of John Smith on Facebook.  Also, defendant

Schwartz has made numerous posts on a social bookmarking website, Digg.com, promoting the Infringing Website.

153.    On July 29, 2008, Mygazines.com issued a press release, stating that "The mygazines concept is simple, essentially it allows its members to share magazines in the same manner a doctors' office, law firm, libraries, and hair salons would with their clients every day. mygazines allows users to read, archive and upload content for everyone to read and share within the online magazine community."  It further states that "The mygazines platform was designed for growth, and the possibilities are endless."

154.    On August 5, 2008, Mygazines.com sent a letter (without attribution by an individual author) to *Press Gazette*, a British publication that had previously written about Mygazines.com.  The letter, published in full by the *Press Gazette*, described the website as a "free magazine store" and responded to previous press coverage of the Infringing Website by stating that:

> The most surprising aspect of almost every article is that they are completely missing our inactive revenue model. We have ways of drawing revenue from a number of sources, some more obvious than others. Mygazines is hardly a pirate website with the interest of breaking the industry. Rather, we offer a paradigm shift that is far more fiscally comprehensive than meets the eye and yet easily transitionable by even the biggest publishers.... The true future of the industry lies in the final stages of our site concept. We can easily transition to the final revenue model quickly with the co-operation of the publishers. We cannot however reveal the full concept at this time as we are saving that discussion for the publishing industry directly...

155.    In that letter, defendants stated that "Mygazines sharing model is a solid one with lots of hidden potential revenue and demographics to appease all."  Upon information and belief, defendants already obtain substantial revenue by linking to Amazon.com in connection with each unauthorized copy they display on the Infringing Website.

156.    Recently, the Infringing Website has begun encouraging users to refer friends to the Site, by offering a monthly prize of $1,000, in U.S. dollars, to the user who refers the most friends each month, with a grand prize of $5,000 for the user who has referred the most friends over a six-month period.

157.    Alexa.com, a website that provides statistics for traffic to websites, shows that traffic to the Infringing Website has skyrocketed, moving from a ranking of 8,234,477 to an average ranking during the first week of August 2008 of 23,480 (that is, putting it in the top 25,000 most visited websites in the world).

158.    Upon information and belief, defendant Budd has launched a new website, Porngazines.com, which is a direct clone of Mygazines.com, except that it offers only "adult" magazines.   The domain name for Porngazines.com is registered to "Juan Cortez" at the same address as Salveo Limited in The Valley, Anguilla.   Upon information and belief, defendant Budd has also registered the following additional domain names:  kidgazines.com, mygazines.us, mygazines.org, mygazines.info, mygazines.biz, yourgazines.com, mygazineslive.com, and mygazinesonline.com.

### The Structure of the Infringing Website

159.    Upon information and belief, the web hosting structure of Mygazines.com is such that when a user types www.mygazines.com into their web browser, the page that is displayed is hosted by a host in a foreign jurisdiction.   To date these hosts have been located in Hong Kong, Russia, Sweden and the Bahamas.   However, upon a deeper analysis of the structure, it appears that only a small portion of the website is stored on these "front-end" servers.   The "front-end" server only stores the website's PHP, JavaScript and flash files. The PHP code on the "front-end" server generates the webpage that is viewed when Mygazines.com is accessed.   The flash

and JavaScript files allow the user to "flip" between pages inside a magazine on the website. The "front-end" servers do not store the magazines themselves, but rather generate the magazine content on the web pages by accessing a collection of data files stored on separate "data" servers. Upon information and belief, as of August 15, 2008, Mygazines.com had five "front-end" servers and was rotating between the servers to hide the underlying IP addresses from outside users.

160.    These "data" servers contain the actual images of the magazines. The "data" or image servers are owned and operated by Cybernet and Switchworks. Upon information and belief, the Infringing Website uses at least three "data" servers and, like the "front-end" servers, the "data" servers are rotated on a nearly daily basis to avoid detection.

161.    Mygazines.com's very complex hosting structure enables defendants to hide the location of the infringing content from the public. The setup also allows defendants to respond quickly if a "front-end" server is removed by a web host, because the website can be relocated through a small modification, while the majority of the website content remains on the "data" servers. Upon information and belief, the manner in which Mygazines.com is hosted appears to have been designed specifically to obscure or hide the location of the actual servers which contain most of the code, as well as the image files containing the magazine copies themselves.

162.    Upon information and belief, Abbas and Schwartz were the primary parties involved in the technical design of the Infringing Website. Both of their names appear within the computer code of the site. Both were among the very first users to sign up as "friends" on the Website, and both have posted multiple "mygazines" on the site. Schwartz in particular has been involved in promotion of the website, and Abbas is connected with the "gift" software application for Mygazines.com available on Facebook.

163.     Cybernet and Switchworks, and their owner Ross, who responded personally to one of the plaintiffs' demand and take-down letters (although merely to say he would investigate further), have been on notice for weeks that the Publishers believe that the website infringes their rights under the Copyright and Lanham Acts.  However, they have not taken any steps to respond to plaintiffs' demands, but instead continue to profit from hosting the website.  Given Ross' public statements about Switchworks acting as an incubator for Internet companies, and his apparent preference for companies that begin with a "My" prefix, upon information and belief, Ross and his companies are substantially involved in the financial and business support for the Infringing Website.

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (For Direct Copyright Infringement, 17 U.S.C. § 501,
### *et seq.* Against All defendants)

164.     Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

165.     The Magazines contain material that is wholly copyrightable subject matter, alone and in combination, under the laws of the United States, and that material is owned or exclusively licensed to the respective Publisher-plaintiff, which holds copyright interests in each Magazine as a whole, as a collective work under and pursuant to 17 U.S.C. § 404.

166.     The Copyright Office has issued valid and subsisting Certificates of Copyright Registration to the respective Publishers for numerous issues of their Magazines, as reflected in Exhibits A hereto.  All of these registrations were obtained within three months of publication of the respective magazine issues under 17 U.S.C. § 412(2).

167.     For other issues of their Magazines, the Publishers have pending applications in the Copyright Office, as also reflected in Exhibit A hereto.

168.    Notwithstanding plaintiffs' ownership of the respective content in their Magazines, defendants have reproduced, distributed, displayed and/or created derivative works from, in whole or in part, the Magazines, without permission, license or authority, in violation of the copyright laws of the United States and the rights of plaintiffs.    These acts constitute direct copyright infringement.

169.    Defendants had access to each issue of the Magazines which they have uploaded to the Infringing Website, and the copies that have been uploaded are substantially similar, if indeed not identical, to the original Magazine issues.

170.    Defendants Budd, Salveo, Cybernet, Switchworks and Ross have not complied with properly constituted take-down notices pursuant to 17 U.S.C. § 512(c)(3)(A), and the Infringing Website does not comply with the requirements of 17 U.S.C. § 512 generally.

171.    Defendants knew or should have known of plaintiffs' rights in and to the Magazines, and have willfully and intentionally infringed the plaintiffs' exclusive rights in the Magazines under 17 U.S.C. § 106, in violation of 17 U.S.C. § 501.

172.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs have been and continue to be damaged, in an amount unknown at present and to be determined at trial and defendants have garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to plaintiffs.

173.    In the alternative and at their election, plaintiffs are entitled to seek maximum statutory damages for each separate act of willful infringement by defendants.

174.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs are entitled to preliminary and permanent injunctive relief enjoining and restraining defendants from infringing their copyrights in the Magazines.

175.    Plaintiffs have no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

**(Inducement of Copyright Infringement, 17 U.S.C. § 501,
*et seq.* Against All Defendants)**

176.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 and 165 through and including 171 set forth hereinabove, as if the same were fully set forth herein.

177.    Third-party users in the United States who copy copyrighted content from plaintiffs' Magazines and upload it to the Infringing Website, display and distribute that content to others, and/or who create and post derivative works from plaintiffs' Magazines, are direct infringers under United States copyright law.

178.    Defendants offer the Infringing Website with the object of promoting its use to infringe plaintiffs' copyrights and, by their clear expression and other affirmative steps, defendants are fostering infringement by users of the Infringing Website.  Defendants have actively induced such third-party users to upload copyrighted content to the Infringing Website, to share that content with others, and to create derivative works combining content from multiple publishers.  Defendants knew, or had reason to know, that these actions by users, which they have induced, would infringe plaintiffs' copyrights in the Magazines.

179.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs have been and continue to be damaged in an amount unknown at present and to be ascertained at trial and defendants have garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to plaintiffs.

180.    In the alternative and at their election, plaintiffs are entitled to seek maximum statutory damages for each separate act of willful intentional contributory infringement.

181.    As a direct and proximate result thereof, plaintiffs are entitled to preliminary and permanent injunctive relief enjoining and restraining defendants from contributing to their infringement of the Magazines by third-party users in the United States.

182.    Plaintiffs have no adequate remedy at law.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (For Contributory Copyright Infringement, 17 U.S.C. § 501, *et seq.* Against All Defendants)

183.    Plaintiffs repeat and reallege paragraphs 1 through and including 163, 165 through and including 171, and 177 through and including 178 set forth hereinabove, as if the same were fully set forth herein.

184.    Third-party users in the United States who copy copyrighted content from plaintiffs' Magazines and upload it to the Infringing Website, display and distribute that content to others, and/or who create and post derivative works from plaintiffs' Magazines, are direct infringers under United States copyright law.

185.    Defendants have actively induced, encouraged, enabled and contributed to such third-party users' infringing activities, including the uploading of copyrighted content to the Infringing Website, the sharing of that content with others, and the creation of derivative works combining content from multiple publishers.  Defendants knew, or had reason to know, that these actions by users would infringe plaintiffs' copyrights in the Magazines.

186.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs have been and continue to be damaged in an amount unknown at present and to be ascertained at trial and defendants have garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to plaintiffs.

187.    In the alternative and at their election, plaintiffs are entitled to seek maximum statutory damages for each separate act of willful intentional contributory infringement.

188.    As a direct and proximate result thereof, plaintiffs are entitled to preliminary and permanent injunctive relief enjoining and restraining defendants from contributing to their infringement of the Magazines by third-party users in the United States.

189.    Plaintiffs have no adequate remedy at law.

### AS AND FOR A FOURTH CLAIM FOR RELIEF

**(for Vicarious Copyright Liability, 17 U.S.C. § 501,
*et seq.* Against All Defendants)**

190.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 and 165 through and including 171 set forth hereinabove, as if the same were fully set forth herein.

191.    Third-party users in the United States who copy copyrighted content from plaintiffs' Magazines and upload it to the Infringing Website, display and distribute that content to others, and/or who create and post derivative works from plaintiffs' Magazines, are direct infringers under United States copyright law.

192.    Defendants have the right and ability to supervise and control the infringing acts of third-party users in connection with the Infringing Website.

193.    Defendants derive a direct financial interest from the exploitation of plaintiffs' copyrighted Magazines by third-party users in connection with the Infringing Website.

194.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs have been and continue to be damaged in an amount unknown at present and to be ascertained at trial and defendants have garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to plaintiffs.

195.    In the alternative and at their election, plaintiffs are entitled to seek maximum statutory damages for each separate act of willful intentional infringement for which defendants are vicariously liable.

196.    As a direct and proximate result of the copyright infringement detailed herein, plaintiffs are entitled to preliminary and permanent injunctive relief enjoining and restraining defendants from permitting their infringement of plaintiffs' Magazines on the Infringing Website by third-party users in the United States.

197.    Plaintiffs have no adequate remedy at law.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (Registered Trademark Infringement, 15 U.S.C. § 1114 *et seq.* Against All Defendants)

198.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

199.    Plaintiffs' claim arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114 for registered trademark infringement.

200.    As above stated, each of the plaintiffs holds valid and subsisting federal trademark registrations for its respective Marks, each of which are either arbitrary, inherently distinctive or suggestive, and/or are marks in which the respective plaintiff has acquired secondary meaning.

201.    Each of the plaintiffs has used its respective Marks continuously and extensively in interstate commerce in the United States for many years.

202.    Through plaintiffs' above-described use and their respective advertising, promotional, merchandising and licensing activities over many years, each of the Marks has

acquired secondary meaning such that consumers upon hearing or seeing those Marks, think of a particular origin or source of serial publications sold under that name and those marks.

203. Plaintiffs have established extensive goodwill in the Marks, and they are uniquely associated with the respective plaintiff-owner in the minds of the general public.

204. Defendants have used and continue to use each of the Marks on and/or in connection with their own service, *i.e.*, the Infringing Website; on their counterfeit copies of plaintiffs' Magazines; and in their own "mygazines"; all without license or authorization from plaintiffs.

205. Defendants upload and display counterfeit copies of plaintiffs' Marks on the Infringing Website.

206. Defendants' products and services are targeted to the exact same consumers as plaintiffs target their products and services.

207. Defendants' advertising and promotion of the Infringing Website is intentionally designed to deceive and has deceived customers and prospective customers into believing that the products and services offered by defendants are authorized, licensed or otherwise approved by plaintiffs.

208. As a direct and proximate result of defendants' actions, the public is likely to be confused as to the origin and source of defendants' products and services and/or to believe that defendants are licensed, sponsored or otherwise authorized by plaintiffs to offer those products and services.

209. Defendants' blatant and continuing use of the Marks, despite notification of such infringing conduct, constitutes willful and intentional trademark infringement.

210. Defendants, upon information and belief, have earned or will earn profits as a direct result of their unauthorized use of the Marks.

211. As a direct and proximate result of the willful and wanton conduct of defendants, plaintiffs have been injured and will continue to suffer harm in this District, the State of New York, and throughout the United States in an amount unknown at present and to be determined at trial.

212. Defendants' use in commerce of counterfeit copies of plaintiffs' marks mandates an award of treble damages pursuant to 15 U.S.C. § 1117(b).

213. As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from use of the Marks.

214. Plaintiffs have no adequate remedy at law.

215. The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to their reasonable attorneys fees.

<u>**AS AND FOR A SIXTH CLAIM FOR RELIEF**</u>

**(Contributory Trademark Infringement, 15 U.S.C. § 1114
*et seq.* Against All Defendants)**

216. Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

217. Plaintiffs' claim arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

218. As above stated, each of the plaintiffs holds valid and subsisting federal trademark registrations for its respective Marks, each of which are either arbitrary, inherently distinctive or suggestive, and/or are marks in which the respective plaintiff has acquired secondary meaning.

219.    Each of the plaintiffs has used its respective Marks continuously and extensively in interstate commerce in the United States for many years.

220.    Through plaintiffs' above-described use and their respective advertising, promotional, merchandising and licensing activities over many years, each of the Marks has acquired secondary meaning such that consumers upon hearing or seeing those Marks, think of a particular origin or source of serial publications sold under that name and those marks.

221.    Plaintiffs have established extensive goodwill in the Marks, and they are uniquely associated with the respective plaintiff-owner in the minds of the general public.

222.    The above-described uses of the Marks by third-party users of the Infringing Website constitute direct infringements of plaintiffs' rights in their respective Marks.

223.    Defendants, through the exhortations on the Infringing Website and in the press and through their advertisements and promotion for that Website, have encouraged and induced third-party users to upload counterfeit copies of plaintiffs' Marks, to create "mygazines" bearing the respective Publishers' Marks which do not emanate from that Publisher, and to perform other actions that constitute or cause or are likely to constitute or cause infringement of plaintiffs' rights in their Marks.

224.    As a direct and proximate result of the above-described actions, the public is likely (i) to be confused as to the origin and source of the products and services offered under the counterfeit copies of plaintiffs' Marks on the Infringing Website; (ii) to be confused as to the origin and source of the "mygazines"; and/or (iii) to believe that defendants are licensed, sponsored or otherwise authorized by plaintiffs to offer those products and services.

225.    Defendants' blatant and continuing inducement and encouragement of their third-party users' unauthorized use of the Marks, despite notification of such infringing conduct, constitutes willful and intentional trademark infringement.

226.    Defendants, upon information and belief, have earned or will earn profits as a direct result of their inducement and encouragement of third-party users of their Website to make unauthorized use of the Marks.

227.    As a direct and proximate result of the willful and wanton conduct of defendants, plaintiffs have been injured and will continue to suffer harm in this District, the State of New York, and throughout the United States in an amount unknown at present and to be determined at trial.

228.    The use in commerce by defendants' third-party users of counterfeit copies of plaintiffs' Marks requires an award of treble damages pursuant to 15 U.S.C. § 1117(b).

229.    As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from inducing and encouraging their third-party users' unauthorized use of the Marks.

230.    Plaintiffs have no adequate remedy at law.

231.    The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to their reasonable attorneys fees.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1) Against All Defendants)

232.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

233.    Plaintiffs' claim arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), for trademark infringement and unfair competition.

234.    As above-stated, each of the plaintiffs own all rights in and to the Marks, each of which is either arbitrary, inherently distinctive or suggestive, and/or are marks in which the respective plaintiff has acquired secondary meaning.

235.    Each of the plaintiffs has used its respective Marks continuously and extensively in commerce in the United States for many years.

236.    Through plaintiffs' above-described use and their respective advertising, promotional, merchandising and licensing activities over many years, each of the Marks has acquired secondary meaning such that consumers, upon hearing or seeing those Marks, think of a particular origin or source of serial publications sold under that name and those marks.

237.    Plaintiffs have established extensive goodwill in the Marks, and they are uniquely associated with the respective plaintiff-owner in the minds of the general public.

238.    Defendants have used and continue to use each of the Marks on and/or in connection with their own service, *i.e.*, the Infringing Website; on their counterfeit copies of plaintiffs' Magazines; and in their own "mygazines"; all without license or authorization from plaintiffs.

239.    Defendants upload and display counterfeit copies of plaintiffs' Marks on the Infringing Website.

240.    Defendants' products and services are targeted to the exact same consumers as plaintiffs target their products and services.

241.    Defendants' advertising and promotion of the Infringing Website is intentionally designed to deceive and has deceived customers and prospective customers into believing that

the products and services offered by defendants are authorized, licensed or otherwise approved by plaintiffs.

242.   As a direct and proximate result of defendants' actions, the public is likely to be confused as to the origin and source of defendants' products and services and/or to believe that defendants are licensed, sponsored or otherwise authorized by plaintiffs to offer those products and services.

243.   Defendants' blatant and continuing use of the Marks, despite notifications of such infringing conduct, constitutes willful and intentional trademark infringement and unfair competition.

244.   Defendants, upon information and belief, have earned or will earn profits as a direct result of their unauthorized use of the Marks.

245.   As a direct and proximate result of the willful and wanton conduct of defendants, plaintiffs have been injured and will continue to suffer harm in this District, the State of New York, and throughout the United States in an amount unknown at present and to be determined at trial.

246.   As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from use of the Marks.

247.   Plaintiffs have no adequate remedy at law.

248.   The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to enhanced damages and an award of reasonable attorneys fees.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF

### (False Advertising, 15 U.S.C. § 1125(a)(2)
### Against Defendants Budd and Salveo)

249.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

250.    Plaintiffs' claim arises under § 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(2).

251.    Defendants have made material, false and misleading descriptions or misrepresentations of fact concerning the Infringing Website, in commercial advertising and promotion for and on the Website itself, by giving the clear but false impression that plaintiffs have licensed or otherwise authorized the owners and operators of the Infringing Website to reproduce, display, and distribute their Magazines and to create and permit others to create and disseminate derivative works under the Publisher's respective trademarks, and that plaintiffs license or endorse the Infringing Website's uses of their trademarks and trade dress.

252.    Defendants' conduct is willful, deliberate, intentional and in bad faith.

253.    Defendants' false and misleading representations about the Infringing Website and plaintiffs' role therein have deceived or are likely to deceive a substantial segment of the intended audience and to cause plaintiffs and each of them actual injury.

254.    The Infringing Website and the advertising and promotion therefor are being displayed and distributed in interstate commerce.

255.    As a direct and proximate result of defendants' false and misleading representations, plaintiffs have been damaged in an amount unknown at present and to be proved at trial.

256.    Plaintiffs are entitled to treble damages based on the bad faith and willful conduct of defendants.

257.    Plaintiffs have suffered and, unless defendants are enjoined, will likely continue to suffer, irreparable injury by reason of the false and misleading claims made by defendants about the Infringing Website and plaintiffs' role therein.

258.    Plaintiffs have no adequate remedy at law.

259.    The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to their reasonable attorneys fees.

## AS AND FOR A NINTH CLAIM FOR RELIEF

### (Trademark Dilution, 15 U.S.C. § 1125(c) Against Defendants Budd, Salveo, Abbas and Schwartz)

260.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

261.    Plaintiffs' claim arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

262.    As set forth herein above, many of the Marks are "famous" marks as defined by 15 U.S.C. § 1125(c)(1)(a) through (h).

263.    Defendants' above-described infringing uses of the Marks began after the Marks had become famous.

264.    Upon information and belief, defendants' above-described infringing uses, including but not limited to conjoining defendants' "MYGAZINES" mark with each of plaintiffs' famous Marks and their own creation of "mygazines" conjoining the famous marks of plaintiffs with the marks of others, cause and/or are likely to cause dilution of the famous Marks by blurring the distinctive nature of each of the famous Marks.

265.   Upon information and belief, defendants have earned, or will earn, profits as a direct result of their unauthorized use of the famous Marks.

266.   As a direct result of the willful and wanton conduct of defendants, plaintiffs have been injured and will continue to suffer damages in this District, the State of New York and throughout the United States in an amount unknown at present and to be determined at trial.

267.   As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from use of the famous Marks.

268.   Plaintiffs have no adequate remedy at law.

269.   The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to their reasonable attorneys fees.

## AS AND FOR A TENTH CLAIM FOR RELIEF

### (Contributory Trademark Dilution, 15 U.S.C. § 1125(c) Against All Defendants)

270.   Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

271.   Plaintiffs' claim arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

272.   As set forth above, many of the Marks are "famous" marks as defined by 15 U.S.C. § 1125(c)(1)(a) through (h).

273.   The above-described uses of the Marks by third-party users of the Infringing Website, including but not limited to the conjunction of Plaintiffs' famous Marks with other trademarks in the "mygazines", cause and/or are likely to cause dilution of plaintiffs' Marks by blurring and/or are likely to blur, the distinctive nature of the famous Marks.

274.   Such third-party use began after the Marks had become famous.

275.    Defendants, through the exhortations on the Infringing Website and in the press and through their advertisements and promotion for that Website, have encouraged and induced third-party users to create "mygazines" and perform other actions that constitute or cause or are likely to constitute or cause the dilution of plaintiffs' famous Marks.

276.    Upon information and belief, defendants have earned, or will earn, profits as a direct result of third-party users' unauthorized use of the famous Marks.

277.    As a direct result of the willful and wanton conduct of defendants, plaintiffs have been injured and will continue to suffer damages in this District, the State of New York and throughout the United States in an amount unknown at present and to be determined at trial.

278.    As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from use of the Marks.

279.    Plaintiffs have no adequate remedy at law.

280.    The foregoing conduct renders this case exceptional under 15 U.S.C. § 1117(a), entitling plaintiffs to their reasonable attorneys fees.

## AS AND FOR A ELEVENTH CLAIM FOR RELIEF

### (Trademark Dilution, N.Y. Gen. Bus. Law § 360-l)

281.    Plaintiffs repeat and reallege paragraphs 1 through and including 163 set forth hereinabove, as if the same were fully set forth herein.

282.    Plaintiffs' claim arises under N.Y. Gen. Bus. Law § 360-l.

283.    As set forth hereinabove, the Marks are distinctive.

284.    Defendants' above-described infringing uses of the Marks were intentional predatory acts which began after each of the Marks had become distinctive.

285.    Defendants' above-described infringing uses cause and/or are likely to cause actual dilution of the distinctive Marks by blurring.

286.   As a direct and proximate result thereof, plaintiffs are entitled to injunctive relief enjoining and restraining defendants from use of the Marks .

287.   Plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs request judgment against defendants, as follows:

A.     For a preliminary and permanent injunction prohibiting defendants, their officers, directors, agents, servants employees, licensees and assigns, and all persons, forms or corporations acting under their direction or pursuant to their control, or in active concert or participation with them from:

(1)   reproducing, uploading, posting, displaying, distributing or creating derivative works from plaintiffs' copyrighted magazine content in the United States;

(2)   inducing, encouraging, causing, facilitating, materially contributing to, or receiving a direct financial benefit from, the reproduction, uploading, posting, display, distribution or creation of derivative works from plaintiffs' copyrighted magazine content by others in the United States; and

(3)   using any trademark or trade dress that is likely to be confusingly similar to, or dilutive of, any of plaintiffs' trademarks or service marks or trade dress, in a way that is likely to have an impact on interstate commerce; and

(4)   inducing, encouraging, causing, facilitating, materially contributing to, or receiving a direct financial benefit from, the use, reproduction, posting, and display of any trademark or trade dress that is likely to be confusingly similar to, or dilutive of, any of plaintiffs' trademarks or service marks or trade dress, in a way that is likely to have an impact on interstate commerce, by others in the United States.

B.     For an award of actual damages plaintiffs have sustained as a result of defendants' acts of copyright and trademark infringement, unfair competition and dilution, and false advertising, pursuant to 17 U.S.C. § 503, 15 U.S.C. § 1117(a), and the common law, and a trebling of such damages pursuant to 15 U.S.C. § 1117(b);

C.     For an order requiring defendants to account for and pay over to plaintiff all gain, profits and advantages derived by defendants from its acts of infringement, unfair competition, dilution and false advertising, pursuant to 17 U.S.C. § 504, 15 U.S.C. § 1117(a) and the common law;

D.     At plaintiffs' election, for an award of statutory damages pursuant to 17 U.S.C. § 504 in the amount of $150,000 for each willful violation thereof;

E.     For an order awarding plaintiffs prevailing party attorneys' fees under 17 U.S.C. § 505, together with costs and disbursements in this action;

F.     For an order awarding plaintiffs their attorneys fees under 15 U.S.C. § 1117(a);

G.     For prejudgment interest according to law; and

H.     For such other relief as the Court may deem just and proper.

Dated: New York, New York
       August 19, 2008

Respectfully Submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
    Robert D. Balin (RDB 5847)
    Lacy H. Koonce, III (LK 8784)
    Deborah A. Adler (DA 0909)

1633 Broadway
New York, New York 10019
Tel:    (212) 489-8230
Fax:    (212) 489-8340

*Attorneys for Plaintiffs*

EXHIBIT A

## Time Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Business 2.0 | April 2007 | | | 2615623 |
| Business 2.0 | May 2007 | | | |
| Coastal Living | June 2008 | | 2,233,877 | |
| Coastal Living | July 2008 | | | |
| Cooking Light | June 2008 | | 1,586,703 | |
| Cooking Light | July 2008 | | 2,583,662 | |
| Cooking Light | August 2008 | | | |
| Entertainment Weekly | June 20, 2008 | TX 6-648-136 | 1,678,451 | |
| Entertainment Weekly | June 27, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | July 11, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | July 18, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | July 25, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | August 1, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | August 8, 2008 | TX 6-648-136 | | |
| Entertainment Weekly | August 15, 2008 | | | |
| Entertainment Weekly | August 22, 2008 | | | |
| Essence | July 2008 | TX 6-648-139 | 1,131,744 | |
| Essence | August 2008 | TX 6-857-547 | | |
| Essence | September 2008 | | | |
| Fortune | July 7, 2008 | TX 6-648-134 | 634,608 | |
| | | | 973,437 | |
| | | | 1,711,702 | |
| Fortune 500 | May 5, 2008 | | 1,368,907 | |
| Fortune Small Business | May 2007 | | 3,397,563 | |
| | | | 2,422,253 | |
| Fortune Special Investors Issue | 2008 | | | |
| Golf | June 2008 | TX 6-648-132 | 2,752,640 | |
| Golf | August 2008 | TX 6-857-563 | 2,349,798 | |
| Golf | September 2008 | | 1,521,755 | |
| | | | 2,382,518 | |
| Health | June 2008 | | 1,961,337 | |
| Health | July 2008 | | | |
| In Style | July 2008 | TX 6-648-137 | 1,829,389 | |
| In Style | August 2008 | TX 6-857-567 | 3,194,185 | |
| | | | 3,398,244 | |
| | | | 1,851,469 | |

2

# Time Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Money | June 2008 | TX 6-648-141 | | 3,060,419 |
| Money | August 2008 | | | 1,001,798 |
| People | May 26, 2008 | TX 6-648-142 | | 2,697,635 |
| People | June 2, 2008 | TX 6-648-142 | | |
| People | June 16, 2008 | TX 6-648-130 | | |
| People | June 23, 2008 | TX 6-648-130 | | |
| People | June 30, 2008 | TX 6-648-130 | | |
| People | July 7, 2008 | TX 6-648-130 | | |
| People | July 14, 2008 | TX 6-648-130 | | |
| People | July 21, 2008 | TX 6-648-130 | | |
| People | July 28, 2008 | TX 6-648-130 | | |
| People | August 4, 2008 | TX 6-648-130 | | |
| People | August 11, 2008 | TX 6-648-130 | | |
| People | August 18, 2008 | TX 6-648-130 | | |
| People | August 25, 2008 | TX 6-648-130 | | |
| People Child Stars | Summer 2008 | | | |
| People en Espanol | July 2008 | TX 6-648-131 | | 2,182,518 |
| People en Espanol | August 2008 | TX 6-648-131 | | |
| People en Espanol | September 2008 | | | |
| People Style Watch | June 2008 | TX 6-857-545 | | 2,725,720 |
| Real Simple | June 2008 | TX 6-648-138 | | 2,470,211 |
| Real Simple | July 2008 | TX 6-648-138 | | |
| Real Simple | August 2008 | TX 6-857-840 | | |
| Southern Accents | July 2008 | | | 1,103,041 |
| Southern Living | June 2008 | | | 1,322,151 |
| Southern Living | July 2008 | | | 847,643 |
| Southern Living | August 2008 | | | |
| Sports Illustrated | May 12, 2008 | TX 6-648-145 | | 754,203 |
| Sports Illustrated | May 19, 2008 | TX 6-648-145 | | |
| Sports Illustrated | June 2, 2008 | TX 6-648-145 | | |
| Sports Illustrated | June 16, 2008 | TX 6-648-145 | | |
| Sports Illustrated | June 23, 2008 | TX 6-648-133 | | |
| Sports Illustrated | June 30, 2008 | TX 6-648-133 | | |
| Sports Illustrated | July 7, 2008 | TX 6-648-133 | | |
| Sports Illustrated | July 14, 2008 | TX 6-648-133 | | |
| Sports Illustrated | July 28, 2008 | TX 6-648-133 | | |

3

# Time Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Sports Illustrated | August 4, 2008 | TX 6-648-133 | | |
| Sports Illustrated | August 11, 2008 | | | |
| Sports Illustrated | August 18, 2008 | | | |
| Sports Illustrated For Kids | June 2008 | TX 6-857-684 | | 1,863,715 |
| Sports Illustrated For Kids | July 2008 | TX 6-857-559 | | 1,578,963 |
| Sports Illustrated For Kids | August 2008 | TX 6-857-562 | | 3422999 |
| Sports Illustrated For Kids | September 2008 | | | 3423012 |
| This Old House | July 2008 | TX 6-648-140 | | 1,992,003 |
| This Old House | September 2008 | | | 2,238,871 |
| Time | May 12, 2008 | TX 6-648-143 | | 3,223,154 |
| Time | May 19, 2008 | TX 6-648-143 | | 810455 |
| Time | June 2, 2008 | TX 6-648-143 | | 629122 |
| Time | June 9, 2008 | TX 6-648-143 | | 1,058,390 |
| Time | June 16, 2008 | TX 6-648-143 | | 1,106,087 |
| Time | June 23, 2008 | TX 6-648-135 | | |
| Time | July 7, 2008 | TX 6-648-135 | | |
| Time | July 14, 2008 | TX 6-648-135 | | |
| Time | July 21, 2008 | TX 6-648-135 | | |
| Time | July 28, 2008 | TX 6-648-135 | | |
| Time | August 4, 2008 | TX 6-648-135 | | |
| Time | August 11, 2008 | TX 6-648-135 | | |
| Time | August 18, 2008 | TX 6-648-135 | | |

**Hearst**

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Cosmogirl! | June/July 2008 | TX 6-648-112 | | 2,527,954 |
| Cosmogirl! | August 2008 | TX 6-648-112 | | |
| Cosmogirl! | September 2008 | | Application Submitted | |
| Cosmopolitan | June 2008 | TX 6-648-103 | | 630,028 |
| Cosmopolitan | August 2008 | TX 6-648-103 | | |
| Cosmopolitan | September 2008 | | | |
| Cosmopolitan Style and Beauty Issue | Summer 2008 | TX 6-648-103 | | |
| Country Living | June 2008 | TX 6-648-114 | | 2,442,089 |
| Country Living | July 2008 | TX 6-648-114 | | |
| Country Living | August 2008 | TX 6-648-114 | | |
| Country Living | September 2008 | | August 1, 2008 | |
| Esquire | June 2008 | TX 6-648-113 | | 313,768 |
| Esquire | July 2008 | TX 6-648-113 | | |
| Esquire | August 2008 | TX 6-648-113 | | |
| Esquire | September 2008 | | August 11, 2008 | |
| Good Housekeeping | June 2008 | TX 6-648-106 | | 46,028 |
| Good Housekeeping | August 2008 | TX 6-648-106 | | |
| Good Housekeeping | September 2008 | | | |
| Harper's Bazaar | September 2007 | TX 6-856-808 | | 274,802 |
| Harper's Bazaar | June 2008 | TX 6-648-104 | | |
| Harper's Bazaar | July 2008 | TX 6-648-104 | | |
| Harper's Bazaar | August 2008 | TX 6-648-104 | | |
| Harper's Bazaar | September 2008 | | | |
| House Beautiful | August 2007 | TX 6-594-569 | | 273,427 |
| House Beautiful | July 2008 | TX 6-648-105 | | |
| House Beautiful | August 2008 | TX 6-648-105 | | |
| Marie Claire | May 2008 | TX 6-648-109 | | 2,679,247 |
| Marie Claire | June 2008 | TX 6-648-109 | | |
| Marie Claire | August 2008 | TX 6-648-109 | | |
| Marie Claire | September 2008 | | | |
| O The Oprah Magazine | June 2008 | TX 6-648-116 | | 2,691,371 |
| O The Oprah Magazine | July 2008 | TX 6-648-116 | | |
| O The Oprah Magazine | August 2008 | TX 6-648-116 | | |
| O The Oprah Magazine | September 2008 | | August 14, 2008 | |
| Popular Mechanics | June 2008 | TX 6-648-115 | | 101,201 |
| Popular Mechanics | August 2008 | TX 6-648-115 | | |
| Popular Mechanics | September 2008 | | August 13, 2008 | |

# Hearst

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Redbook | June 2008 | TX 6-648-110 | | 968,669 |
| Redbook | July 2008 | TX 6-648-110 | | |
| Redbook | August 2008 | TX 6-648-110 | | |
| Seventeen | June 2008 | TX 6-648-107 | | 411,294 |
| Seventeen | August 2008 | TX 6-648-107 | | |
| Seventeen | September 2008 | | | |
| SmartMoney | June 2008 | TX 6-648-080 | | 1,730,322 |
| SmartMoney | July 2008 | TX 6-648-080 | | |
| SmartMoney | August 2008 | TX 6-648-080 | | |
| Town & Country | June 2008 | TX 6-648-108 | | 188,718 |
| Town & Country | August 2008 | TX 6-648-108 | | |
| Town & Country | September 2008 | | | |
| Veranda | August 2008 | TX 6-648-111 | | |
| Veranda | September 2008 | | | |

2

11611147_2.XLS

**Advance Magazine Publishers Inc.**
**d/b/a Conde Nast**

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Allure | June 2008 | | Application Submitted | 1378072 |
| Allure | July 2008 | | Application Submitted | 1751874 |
| Allure | August 2008 | | Application Submitted | |
| Architectural Digest | January 2007 | TX 6-502-788 | | 916331 |
| Architectural Digest | February 2007 | TX 6-513-535 | | 2471378 |
| Architectural Digest | March 2007 | TX 6-549-578 | | |
| Architectural Digest | April 2007 | TX 6-559-017 | | |
| Architectural Digest | May 2007 | TX 6-593-361 | | |
| Architectural Digest | June 2007 | TX 6-595-375 | | |
| Architectural Digest | September 2007 | TX 6-825-462 | | |
| Architectural Digest | October 2007 | | Application Submitted | |
| Architectural Digest | November 2007 | | Application Submitted | |
| Architectural Digest | May 2008 | | Application Submitted | |
| Architectural Digest | July 2008 | | Application Submitted | |
| Architectural Digest | August 2008 | | Application Submitted | |
| Architectural Digest | September 2008 | | Application Submitted | |
| Bon Appetit | June 2008 | | Application Submitted | 653791 |
| Bon Appetit | July 2008 | | Application Submitted | 3480492 |
| Bon Appetit | August 2008 | | Application Submitted | |
| Bon Appetit | September 2008 | | | |
| Brides | July 2008 | | Application Submitted | 340115 |
| Brides | September 2008 | | | |
| Conde Nast Traveler | July 2008 | | Application Submitted | 1568296 |
| Conde Nast Traveler | August 2008 | | Application Submitted | |
| Details | January 2006 | | Application Submitted | 2728880 |
| Details | June 2008 | | Application Submitted | 2695667 |
| Details | August 2008 | | Application Submitted | |
| Details | September 2008 | | | |
| Domino | June 2008 | | Application Submitted | 3014161 |
| Domino | August 2008 | | Application Submitted | |
| Glamour | May 2008 | | Application Submitted | 407439 |
| Glamour | June 2008 | | Application Submitted | 503282 |
| Glamour | August 2008 | | Application Submitted | |
| Glamour | September 2008 | | | |
| Gourmet | July 2008 | | Application Submitted | 384160 |
| Gourmet | August 2008 | | Application Submitted | |

1161147_2.XLS

## Advance Magazine Publishers Inc.
### d/b/a Conde Nast

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| House & Garden | June 2008 | | | |
| Lucky | June 2008 | Application Submitted | | 2469245 |
| Lucky | August 2008 | Application Submitted | | |
| Lucky | September 2008 | | | |
| Modern Bride | June 2008 | Application Submitted | | 529969 |
| Modern Bride | August 2008 | Application Submitted | | |
| Self | June 2008 | Application Submitted | | 1120502 |
| Self | July 2008 | Application Submitted | | 1721094 |
| Self | August 2008 | Application Submitted | | 1663404 |
| Teen Vogue | June 2008 | Application Submitted | | 2568246 |
| Teen Vogue | August 2008 | Application Submitted | | |
| Teen Vogue | September 2008 | | | |
| The New Yorker | April 28, 2008 | Application Submitted | | 2746797 |
| The New Yorker | May 5, 2008 | Application Submitted | | 844606 |
| The New Yorker | May 12, 2008 | Application Submitted | | |
| The New Yorker | May 19, 2008 | Application Submitted | | |
| The New Yorker | May 26, 2008 | Application Submitted | | |
| The New Yorker | June 2, 2008 | Application Submitted | | |
| The New Yorker | June 9, 2008 | Application Submitted | | |
| The New Yorker | June 23, 2008 | Application Submitted | | |
| The New Yorker | June 30, 2008 | Application Submitted | | |
| The New Yorker | July 7, 2008 | Application Submitted | | |
| The New Yorker | July 14, 2008 | Application Submitted | | |
| The New Yorker | July 21, 2008 | Application Submitted | | |
| The New Yorker | July 28, 2008 | Application Submitted | | |
| The New Yorker | August 4, 2008 | Application Submitted | | |
| The New Yorker | August 11, 2008 | Application Submitted | | |
| Vanity Fair | June 2008 | Application Submitted | | 1229720 |
| Vanity Fair | July 2008 | Application Submitted | | |
| Vanity Fair | August 2008 | Application Submitted | | |
| Vanity Fair | September 2008 | | | |
| Vogue | June 2008 | Application Submitted | | 125542 |
| Vogue | July 2008 | Application Submitted | | 504006 |
| Vogue | August 2008 | Application Submitted | | 1336659 |
| | | | | 69530 |
| W | July 2008 | | | 1882171 |

1161114? 2.XLS

## Advance Magazine Publishers Inc.
### d/b/a Conde Nast

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| W | August 2008 | | Application Submitted | |
| Wired | October 2004 | | Application Submitted | 1853612 |
| Wired | January 2006 | | | 2150960 |
| Wired | January 2008 | TX 6-341-378 | | |
| Wired | February 2008 | | Application Submitted | |
| Wired | March 2008 | | Application Submitted | |
| Wired | April 2008 | | Application Submitted | |
| Wired | May 2008 | | Application Submitted | |
| Wired | June 2008 | | Application Submitted | |
| Wired | July 2008 | | Application Submitted | |
| Wired | August 2008 | | Application Submitted | |
| Wired | September 2008 | | Application Submitted | |
| Wired Geekpedia | 2008 | | Application Submitted | |

3

11611147_2.XLS

**American Media, Inc.**

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Country Weekly | May 19, 2008 | | | 2372499 |
| Country Weekly | June 2, 2008 | TX 6-648-097 | | |
| Country Weekly | June 16, 2008 | TX 6-648-097 | | |
| Country Weekly | June 30, 2008 | TX 6-648-097 | | |
| Country Weekly | July 14, 2008 | TX 6-648-097 | | |
| Country Weekly | July 28, 2008 | TX 6-648-097 | | |
| Country Weekly | August 11, 2008 | TX 6-648-097 | | |
| Country Weekly | August 25, 2008 | | | |
| Fit Pregnancy | June 1, 2008 | | | |
| Fit Pregnancy | August 1, 2008 | | | 1,340,659 |
| Flex | June 2008 | TX 6-648-095 | | |
| Flex | August 2008 | TX 6-648-095 | | |
| Flex | September 2008 | TX 6-648-095 | | |
| Globe | May 12, 2008 | | | 1,639,082 |
| Globe | May 19, 2008 | | | |
| Globe | May 26, 2008 | | | |
| Globe | June 23, 2008 | TX 6-648-092 | | |
| Globe | June 30, 2008 | TX 6-648-092 | | |
| Globe | July 7, 2008 | TX 6-648-092 | | |
| Globe | July 14, 2008 | TX 6-648-092 | | |
| Globe | July 21, 2008 | TX 6-648-092 | | |
| Globe | July 28, 2008 | TX 6-648-092 | | |
| Globe | August 4, 2008 | TX 6-648-092 | | |
| Globe | August 11, 2008 | | | |
| Globe | August 18, 2008 | | | |
| Globe | August 25, 2008 | | | |
| Men's Fitness | June/July 2008 | TX 6-648-094 | | 1,956,592 |
| Men's Fitness | August 2008 | TX 6-648-094 | | |
| MUSCLE & FITNESS | July 2008 | TX 6-648-098 | | 2,692,744 |
| MUSCLE & FITNESS | August 2008 | TX 6-648-098 | | 2,686,042 |
| MUSCLE & FITNESS | September 2008 | TX 6-648-098 | | |
| National Enquirer | May 19, 2008 | | | 736,824 |
| National Enquirer | June 9, 2008 | TX 6-648-099 | | 3,087,754 |
| National Enquirer | June 16, 2008 | TX 6-648-099 | | |
| National Enquirer | June 23, 2008 | TX 6-648-099 | | |
| National Enquirer | June 30, 2008 | TX 6-648-099 | | |
| National Enquirer | July 6, 2008 | | | |
| National Enquirer | July 7, 2008 | TX 6-648-099 | | |

11511147_2.XLS

2

## American Media, Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| National Enquirer | July 14, 2008 | TX 6-648-099 | | |
| National Enquirer | July 21, 2008 | TX 6-648-099 | | |
| National Enquirer | July 28, 2008 | TX 6-648-099 | | |
| National Enquirer | August 4, 2008 | TX 6-648-099 | | |
| National Enquirer | August 11, 2008 | TX 6-648-099 | | |
| National Enquirer | August 18, 2008 | | | |
| National Enquirer | August 25, 2008 | | | |
| Shape | April 2008 | | | 1,525,562 |
| Shape | August 2008 | TX 6-648-096 | | 1,498,564 |
| Shape | September 2008 | TX 6-648-096 | | |
| Star | May 19, 2008 | | | 1,224,966 |
| Star | May 26, 2008 | TX 6-648-093 | | |
| Star | June 2, 2008 | TX 6-648-093 | | |
| Star | June 9, 2008 | TX 6-648-093 | | |
| Star | June 16, 2008 | TX 6-648-093 | | |
| Star | June 23, 2008 | TX 6-648-093 | | |
| Star | June 30, 2008 | TX 6-648-093 | | |
| Star | July 7, 2008 | TX 6-648-093 | | |
| Star | July 14, 2008 | TX 6-648-093 | | |
| Star | July 21, 2008 | TX 6-648-093 | | |
| Star | July 28, 2008 | TX 6-648-093 | | |
| Star | August 4, 2008 | TX 6-648-093 | | |
| Star | August 11, 2008 | | | |
| Star | August 18, 2008 | | | |
| Star | August 25, 2008 | | | |

1161147_2.XLS

## Hachette Filipacchi Media U.S., Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Boating | July 2008 | TX 6-648-085 | | 910,927 |
| Boating | August 2008 | TX 6-648-085 | | |
| Boating | September 2008 | | | |
| Car and Driver | July 2008 | TX 6-648-088 | | 904,765 |
| Car and Driver | August 2008 | TX 6-648-088 | | |
| Car and Driver | September 2008 | | | |
| Elle | July 2008 | TX 6-648-089 | | 758,137 |
| Elle Decor | January 2006 | TX 6-333-154 | | 1,732,988 |
| Elle Decor | March 2006 | TX 6-322-911 | | |
| Elle Decor | July 2008 | TX 6-349-861 | | |
| Elle Decor | August 2008 | TX 6-349-861 | | |
| Elle Decor | September 2008 | | | |
| Elle Girl | February 2006 | TX 6-349-861 | | 2,737,728 |
| Elle Girl | March 2006 | TX 6-349-861 | | |
| Flying | August 2008 | TX 6-648-090 | | 521,411 |
| Flying | September 2008 | | | |
| Home | June 2008 | TX 6-648-083 | | 160,374 |
| Home | July 2008 | TX 6-648-083 | | |
| Metropolitan Home | June 2008 | TX 6-648-087 | | 1,235,238 |
| Metropolitan Home | July/August 2008 | TX 6-648-087 | | |
| Metropolitan Home | September 2008 | | | |
| Popular Photography | June 2008 | TX 6-648-086 | | 511,952 |
| Popular Photography | July 2008 | TX 6-648-086 | | |
| Popular Photography | August 2008 | TX 6-648-086 | | |
| Popular Photography | September 2008 | | | |
| Road & Track | June 2008 | TX 6-648-082 | | 854,203 |
| Road & Track | August 2008 | TX 6-648-082 | | |
| Road & Track | September 2008 | | | |
| Sound & Vision | July 2008 | TX 6-648-084 | | 2,428,754 |
| Sound & Vision | September 2008 | | | |
| Sound & Vision HDTV Guide | 2005 | | | |

# The McGraw-Hill Companies, Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Architectural Record | January 2006 | | | 2,218,444 |
| Architectural Record | February 2006 | | | |
| Architectural Record | March 2006 | | | |
| Architectural Record | May 2006 | | | |
| Architectural Record | September 2007 | | | |
| Architectural Record | February 2008 | | | |
| Architectural Record | April 2008 | | | |
| Architectural Record | July 2008 | TX 6-646-794 | | |
| BusinessWeek | December 11, 2006 | | | 1,746,837 |
| BusinessWeek | August 13, 2007 | | | |
| BusinessWeek | October 8, 2007 | | | |
| BusinessWeek | October 29, 2007 | | | |
| BusinessWeek | November 12, 2007 | | | |
| BusinessWeek | December 10, 2007 | | | |
| BusinessWeek | December 17, 2007 | | | |
| BusinessWeek | December 24, 2007 | | | |
| BusinessWeek | January 14, 2008 | | | |
| BusinessWeek | January 21, 2008 | | | |
| BusinessWeek | May 19, 2008 | TX 6-646-795 | | |
| BusinessWeek | May 26, 2008 | TX 6-646-795 | | |
| BusinessWeek | June 2, 2008 | TX 6-646-795 | | |
| BusinessWeek | June 9, 2008 | TX 6-646-795 | | |
| BusinessWeek | June 16, 2008 | TX 6-646-795 | | |
| BusinessWeek | June 23, 2008 | TX 6-646-795 | | |
| BusinessWeek | June 30, 2008 | TX 6-646-795 | | |
| BusinessWeek | July 7, 2008 | TX 6-646-795 | | |
| BusinessWeek | July 14, 2008 | TX 6-646-795 | | |
| BusinessWeek | July 28, 2008 | TX 6-646-795 | | |
| Business Week | August 4, 2008 | TX 6-646-795 | | |
| Business Week | August 11, 2008 | TX 6-646-795 | | |
| Business Week | August 18, 2008 | TX 6-646-795 | | |

## Newsweek, Inc. and Budget Travel

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Arthur Frommer's Budget Travel | July 2008 | TX 6-856-660 | | 2890859 |
| Newsweek | May 5, 2008 | TX 6-648-079 | | 1413355 |
| Newsweek | May 12, 2008 | TX 6-648-079 | | |
| Newsweek | June 16, 2008 | TX 6-648-079 | | |
| Newsweek | June 23, 2008 | TX 6-648-079 | | |
| Newsweek | June 30, 2008 | TX 6-648-079 | | |
| Newsweek | July 7, 2008 | TX 6-648-078 | | |
| Newsweek | July 21, 2008 | TX 6-648-078 | | |
| Newsweek | July 28, 2008 | TX 6-648-078 | | |
| Newsweek | August 4, 2008 | TX 6-648-078 | | |
| Newsweek | August 11, 2008 | TX 6-648-078 | | |

## Source Interlink Companies, Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| 4 WHEEL & OFF ROAD | July 2008 | | August 19, 2008 | 2558789 |
| 4 WHEEL & OFF ROAD | September 2008 | | August 19, 2008 | |
| 4 WHEEL & OFF ROAD | October 2008 | | August 19, 2008 | |
| ATV RIDER | July 2008 | | August 19, 2008 | 2644827 |
| ATV RIDER | August 2008 | | August 19, 2008 | |
| ATV RIDER | September 2008 | | August 19, 2008 | |
| AUTOMOBILE | June 2008 | TX 6-648-102 | | 2604737 |
| AUTOMOBILE | July 2008 | TX 6-648-102 | | |
| AUTOMOBILE | August 2008 | TX 6-648-102 | | |
| AUTOMOBILE | September 2008 | TX 6-648-102 | | |
| CAR CRAFT | September 2008 | | August 19, 2008 | |
| CAR CRAFT | October 2008 | | | |
| DIRT RIDER | July 2008 | | August 19, 2008 | 2688174 |
| DIRT RIDER | August 2008 | | August 19, 2008 | |
| DIRT RIDER | September 2008 | | | |
| FOUR WHEELER | June 2008 | | August 19, 2008 | 1403984 |
| FOUR WHEELER | August 2008 | | August 19, 2008 | |
| FOUR WHEELER | September 2008 | | August 19, 2008 | |
| HOT ROD | August 2008 | | August 19, 2008 | 2372437 |
| HOT ROD | September 2008 | | August 19, 2008 | |
| MOTOR TREND | June 2008 | TX 6-648-101 | | 2367705 |
| MOTOR TREND | July 2008 | TX 6-648-101 | | |
| MOTOR TREND | August 2008 | TX 6-648-101 | | |
| MOTOR TREND | September 2008 | TX 6-648-101 | | |
| MOTORCYCLIST | July 2008 | | August 19, 2008 | 2501973 |
| MOTORCYCLIST | August 2008 | | August 19, 2008 | |
| MOTORCYCLIST | September 2008 | | | |
| MOTORCYCLIST RETRO | Spring 2008 | | August 19, 2008 | |
| POWER & MOTOR YACHT | July 2008 | | August 19, 2008 | 1650102 |
| POWER & MOTOR YACHT | August 2008 | | August 19, 2008 | 2133647 |
| READERS RIGS | Summer 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | May 13, 2008 | | Application Submitted | 1491072 |
| SOAP OPERA DIGEST | May 20, 2008 | | Application Submitted | |
| SOAP OPERA DIGEST | May 27, 2008 | | Application Submitted | |
| SOAP OPERA DIGEST | June 10, 2008 | | Application Submitted | |
| SOAP OPERA DIGEST | June 17, 2008 | | Application Submitted | |

2

## Source Interlink Companies, Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| SOAP OPERA DIGEST | June 24, 2008 | | Application Submitted | |
| SOAP OPERA DIGEST | July 1, 2008 | | Application Submitted | |
| SOAP OPERA DIGEST | July 8, 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | July 15, 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | July 22, 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | July 29, 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | August 5, 2008 | | August 19, 2008 | |
| SOAP OPERA DIGEST | August 12, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | May 13, 2008 | | August 19, 2008 | 2398877 |
| SOAP OPERA WEEKLY | May 20, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | May 27, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | June 3, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | June 17, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | June 24, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | July 1, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | July 8, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | July 15, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | July 22, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | July 29, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | August 5, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | August 12, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | August 19, 2008 | | August 19, 2008 | |
| SOAP OPERA WEEKLY | August 26, 2008 | | August 19, 2008 | |

11611147_2.XLS

# Reed Business Information, a division of Reed Elsevier Inc.,
## Variety, Inc.,
## Reed Elsevier Properties Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Interior Design | June 2005 | TX 6-202-571 | July 15, 2005 | 1911286 |
| Interior Design | May 2008 | | Application Submitted | |
| Interior Design | June 2008 | | Application Submitted | |
| Interior Design | September 2008 | | | |
| Variety | June 30, 2008 | TX 6-648-129 | | 1350618 |
| Variety | July 21, 2008 | TX 6-648-129 | | |

11611147_2.XLS

## Bonnier Corp.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| 9Frames (Transworld Skateboarding special issue) | June 13, 2008 | | | |
| Babytalk | Spring 2008 | | | 2214865 |
| | | | | 3145207 |
| | | | | 661932 |
| Cruising World | July 2008 | | | 1039649 |
| | | | | 2108538 |
| Motor Boating | August 2008 | | | 2696153 |
| | | | | 2686199 |
| Outdoor Life | May 2008 | TX 6-648-128 | | 1002765 |
| Outdoor Life | June 2008 | TX 6-648-128 | | 2173508 |
| Parenting | June 2008 | TX 6-648-126 | | 1578948 |
| Parenting | August 2008 | TX 6-648-126 | | 2026010 |
| Parenting | September 2008 | | | |
| Popular Science | May 2008 | | | 636827 |
| Popular Science | June 2008 | TX 6-648-127 | | 2779282 |
| Popular Science | August 2008 | TX 6-648-127 | | |
| Popular Science | September 2008 | | | |
| Saveur | January 2006 | | | |
| Saveur | March 2006 | | | |
| Saveur | July 2008 | | | |
| Saveur | September 2008 | | | |
| Transworld Skateboarding | May 2008 | | | 2382801 |
| Transworld Skateboarding | August 2008 | | | |
| Transworld Skateboarding | September 2008 | | | |
| Transworld Snowboarding | September 2008 | | | |
| Transworld Surf | September 2008 | | | 2316139 |
| | | | | 2368278 |
| Yachting | July 2008 | | | 2326200 |
| Yachting | August 2008 | | | |

1161114_2.XLS

1

# Ziff Davis Publishing Holdings Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Electronic Gaming Monthly | June 2008 | | August 13, 2008 | 2597416 |
| Electronic Gaming Monthly | July 2008 | | August 13, 2008 | |
| Electronic Gaming Monthly | August 2008 | | August 13, 2008 | |
| Electronic Gaming Monthly | September 2008 | | August 13, 2008 | |
| PC Magazine | February 2008 | | August 13, 2008 | 2590967 |
| PC Magazine | July 2008 | | August 13, 2008 | 1515365 |
| PC Magazine | August 2008 | | August 13, 2008 | 1894061 |
| PC Magazine | September 2008 | | August 13, 2008 | |

# Forbes

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Forbes | November 12, 2007 | | May 2008 | 1,141,299 |
| Forbes | May 5, 2008 | | May 2008 | |
| Forbes | May 19, 2008 | | May 2008 | |
| Forbes | June 16, 2008 | | May 2008 | |
| Forbes | June 30, 2008 | | May 2008 | |
| Forbes | July 21, 2008 | | May 2008 | |
| Forbes | August 11, 2008 | | May 2008 | |
| Forbes Entertainment All Stars | Summer 2008 | | | |
| Forbes Investment Guide | June 2, 2008 | | | |

1161147_2.XLS

## Reader's Digest Association, Inc.

| Publication Name | Publication Date | Copyright Registration | Copyright Application | Trademark Registration |
|---|---|---|---|---|
| Birds & Blooms | June 2008 | | May 20, 2008 | 1964726 |
| Birds & Blooms | August 2008 | | July 17, 2008 | |
| Country Woman | July 2008 | | May 20, 2008 | 2270614 |
| Reader's Digest Large Print | July 2008 | TX 6-648-100 | | 2929038 |
| Reader's Digest Large Print | August 2008 | TX 6-648-100 | | 761376 |
| Selecciones | May 2008 | | | 1585645 |
| Taste of Home | June 2007 | TX 6-589-815 | July 29, 2008 | 2002133 |
| Taste of Home | August 2007 | | August 20, 2007 | |
| Taste of Home | October 2007 | | November 15, 2007 | |
| Taste of Home | December 2007 | | December 17, 2007 | |
| Taste of Home | April 2008 | | March 17, 2008 | |
| Taste of Home | July 2008 | | June 5, 2008 | |
| Taste of Home | September 2008 | | July 28, 2008 | |
| The Family Handyman | June 2008 | TX 6-648-081 | | 1830346 |
| The Family Handyman | July/August 2008 | TX 6-648-081 | | 2427051 |
| The Family Handyman | September 2008 | | | |

EXHIBIT B

DMCA/Cease and Desist
Correspondence Table

| Plaintiff Name | Date of DMCA/Cease and Desist letters sent to: | | |
|---|---|---|---|
| | Salveo | Cybernet | Switchworks |
| American Media, Inc. | July 24, 2008 | July 24, 2008<br>August 6, 2008 | |
| Bonnier Corporation | August 6, 2008 | August 6, 2008 | |
| Condé Nast Publications | July 23, 2008 | July 24, 2008<br>August 6, 2008 | |
| Hachette Filipacchi Media U.S., Inc. | July 24, 2008 | July 24, 2008<br>August 6, 2008 | August 4, 2008 |
| Hearst Corporation | July 24, 2008 | July 23, 2008<br>August 6, 2008 | August 1, 2008<br>August 4, 2008 |
| The McGraw-Hill Cos., Inc. | July 25, 2008 | July 25, 2008<br>August 6, 2008 | August 1, 2008 |
| Newsweek, Inc. | August 1, 2008 | August 6, 2008 | August 4, 2008 |
| Reader's Digest Association, Inc. | August 1, 2008 | August 8, 2008 | |
| Reed Business Information | July 24, 2008 | July 24, 2008<br>August 6, 2008 | |
| Source Interlink magazines, LLC | July 23, 2008 | July 23, 2008<br>August 6, 2008 | |
| Time, Inc. | July 23, 2008 | July 24, 2008<br>August 6, 2008 | August 1, 2008 |
| Ziff Davis Media | July 25, 2008<br>July 31, 2008<br>August 7, 2008 | | |